FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

2014 JUN 16 ⊃ 4: 03

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

---

KAREN MILLEN FASHIONS LIMITED and
MOSAIC FASHIONS US LIMITED f/k/a
KAREN MILLEN US LIMITED

*Plaintiffs,*

v.

KAREN DENISE MILLEN

*Defendant.*

Civil Action No. | : 14 CV 720 CMH/TCB

DEMAND FOR JURY TRIAL

---

## COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiffs, Karen Millen Fashions Limited (henceforth, "KMFL") and Mosaic Fashions US Limited f/k/a Karen Millen US Limited (henceforth, "Mosaic Fashions") (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint allege, upon knowledge as to their own acts and upon information and belief as to the acts of others, as follows:

### NATURE OF THE ACTION

1.       This is an action for breach of contract and declaratory judgment arising from the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.* and 28 U.S.C. § 2201-02. By this action, Plaintiffs seek remedies for breach of contract and a declaratory judgment that defendant Karen Denise Millen (henceforth, "Defendant" or "Ms. Millen") granted consent to Plaintiffs to use and register trademarks incorporating Ms. Millen's name and Plaintiffs seek damages and remedies in connection with Ms. Millen's acts in breach of contract, including but not limited to, filing trademark applications in the United States Patent And Trademark Office (henceforth, "USPTO") for marks incorporating Ms. Millen's name and initiating Cancellation proceedings in the USPTO against KMFL's U.S. trademark registrations.

## THE PARTIES

2.　　Karen Millen Fashions Limited is a United Kingdom limited liability company having its principal place of business in London, United Kingdom.

3.　　Mosaic Fashions US Limited f/k/a Karen Millen Limited is a United Kingdom limited liability company having its principal place of business in New York, New York.

4.　　Karen Denise Millen, upon information and belief, is a United Kingdom citizen living in Witney, Oxfordshire, United Kingdom.

## JURISDICTION AND VENUE

5.　　Subject matter jurisdiction over this action is conferred upon this Court: (i) pursuant to 28 U.S.C. §§ 2201 and 2202, because it involves a request for declaratory judgment in a case of actual controversy; (ii) pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, because, *inter alia*, the suit concerns federally registered trademarks or the right to register trademarks; and (iii) pursuant to jurisdiction pendent and ancillary thereto.

6.　　This Court has jurisdiction over Defendant and venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b) and/or (c) in that, on information and belief, (1) Defendant regularly transacts business in this District or has committed the tortious acts complained of herein within this District, which acts have caused and will cause injury to Plaintiffs; (2) Defendant includes aliens, who may be sued in any District; and/or (3) a substantial part of property that is the subject of the action is situated in this District.

## FACTS

### A.　MS. KAREN MILLEN

7.　　Ms. Millen is a former principal owner of Karen Millen Holdings Limited and Karen Millen Limited (henceforth and collectively, "KM Limited"), a United Kingdom corporation that sold women's fashion apparel bearing the KAREN MILLEN name.

- 2 -

8.     In or about September 2000, Ms. Millen directed KM Limited to begin selling KAREN MILLEN branded women's fashion apparel in the United States.

9.     In support of KM Limited's efforts and to protect its brand, Ms. Millen executed a written consent granting KM Limited the right for "exclusive and continuous use of [Ms. Millen's] name, indefinitely" as required by § 2(c) of the Lanham Act, 15 U.S.C. § 1052.   A copy of that consent is attached to hereto as Exhibit A (the "Consent").

10.     When Ms. Millen executed the Consent, she did not limit it to a specific trademark application or filing date. *See* Exhibit A.

11.     As shareholder and officer of KM Limited, Ms. Millen also participated in the filing of at least one U.S. Trademark Application in connection with the Karen Millen name, including, personally signing documents on the company's behalf through at least 2003. *See, e.g.*, Exhibit A; *see also* Statement of Use for U.S. Trademark App. Serial No. 76/129,319, attached hereto as Exhibit B.

**B.     THE 2004 BUY OUT AGREEMENT**

12.     Pursuant to a "buy out" agreement entered into in June 2004, Plaintiffs Mosaic Fashions and KMFL (by and through its predecessors-in-interest), acquired Ms. Millen's rights and ownership interest in KM Limited and the KAREN MILLEN trademarks (including all common law rights). This agreement is henceforth referred to as the "Buy Out Agreement." Furthermore, the Buy Out Agreement contained restrictions whereby Ms. Millen agreed not to make commercial use of her name in similar or competing business ventures, agreed not to use the KAREN MILLEN trademarks and consented to the use and filing of new trademark registrations incorporating her name.

13.     The rights granted under the Buy Out Agreement give Plaintiffs the right to register the mark KAREN MILLEN and other related marks in the United States in connection

with Plaintiffs' business, which necessarily grants Ms. Millen's consent to Plaintiffs' use and registration of her name.

14.     Ms. Millen received a substantial sum of money in exchange for, *inter alia*, her assignment to Plaintiffs (through KMFL's predecessors-in-interest) the rights in the KAREN MILLEN mark and other marks incorporating the Karen Millen name (collectively, "KAREN MILLEN Marks") and her consent to allow Plaintiffs to use and register additional trademarks incorporating Ms. Millen's name.

## C.     PLAINTIFFS' KAREN MILLEN MARKS

15.     After acquiring Ms. Millen's ownership and trademark rights, Plaintiffs invested substantial time, money, and effort promoting the KAREN MILLEN Marks.

16.     As a result of these efforts, Plaintiffs have become a highly successful multi-national women's apparel retailer, selling and distributing KAREN MILLEN women's fashion apparel and other products in the United States and across the globe.  Plaintiffs operate retail stores under the KAREN MILLEN mark in the United States, United Kingdom, Indonesia, Austria, Austria, Denmark, Norway, Russia, the Republic of Ireland and many other European countries.

17.     The success of the KAREN MILLEN stores and products is due in large part to Plaintiffs' noteworthy designs and successful marketing efforts, which have been based on Plaintiffs' investment of substantial amounts of capital and other resources in development of strong and distinctive branding for their products and retail stores, including the KAREN MILLEN Marks.

18.     As part of their commitment to protecting the KAREN MILLEN brand and with the written consent acquired from Ms. Millen during her tenure with the business and subsequent

Buy Out Agreement, Plaintiffs have secured federal trademark registrations for the KAREN

MILLEN Marks, including the following:

| Mark | Registration No. | Application Date | Registration Date |
|---|---|---|---|
| KAREN MILLEN | 3,469,389 | June 28, 2005 | July 15, 2008 |
| KAREN MILLEN | 3,570,233 | November 9, 2007 | February 3, 2009 |
| KAREN MILLEN | 3,988,125 | October 22, 2010 | July 5, 2011 |
| KAREN BY KAREN MILLEN | 4,322,741 | July 24, 2012 | April 23, 2013 |
| KM BY KAREN MILLEN | 4,412,747 | June 22, 2012 | October. 8, 2013 |

## D.    THE CURRENT DISPUTE

19.     In breach of the Buy Out Agreement, Ms. Millen has undertaken activities to

begin a competing company intent on selling, *inter alia*, fashion apparel, beauty products, and

housewares using the KAREN MILLEN mark and other confusingly similar marks.

20.     In furtherance of that effort, and in breach of the Buy Out Agreement, Ms. Millen

filed several trademark applications in the USPTO, including the following:

| Mark | Serial No. | Application Date |
|---|---|---|
| KAREN BY KAREN MILLEN | 86/246,014 | April 8, 2014 |
| KAREN MILLEN | 86/246,046 | April 8, 2014 |
| HOME BY KAREN | 86/246,065 | April 8, 2014 |
| HOME BY KAREN MILLEN | 86/246,059 | April 8, 2014 |

| Mark | Serial No. | Application Date |
|------|-----------|------------------|
| *Karen* | 86/246,052 | April 8, 2014 |

(henceforth, "Defendant's KAREN MILLEN Trademark Applications").

21.     In April 2014, and in breach of the Buy Out Agreement, Ms. Millen also initiated five cancellation proceedings against Plaintiff's KAREN MILLEN Marks with the Trademark Trial and Appeals Board, based on the allegation that Ms. Millen did not consent to Plaintiffs' registration of the trademarks incorporating her name.

22.     Until her recent filings of petitions for cancellation of Plaintiffs' KAREN MILLEN Marks, Ms. Millen never opposed any U.S. trademark application or registration owned by Plaintiffs or their predecessors-in-interest.

23.     Ms. Millen, through her recent petitions for cancellation, and filing of Defendant's KAREN MILLEN Trademark Applications, now seeks to improperly reap the benefits of Plaintiffs' hard-earned reputation and goodwill that they purchased from Ms. Millen and then subsequently developed in connection with the KAREN MILLEN Marks after Ms. Millen sold them to Plaintiffs.

24.     Ms. Millen has breached the Buy Out Agreement by:  (i) beginning a competing business venture in the United States in connection with her name; (ii) filing trademark applications in the United States for marks incorporating her name; (iii) attempting to use the KAREN MILLEN Marks in the course of business; and (iv) seeking cancellation of Plaintiffs' valid registrations for which Ms. Millen has already conveyed consent.  Ms. Millen's actions are harming and will continue to harm Plaintiffs and be an obstacle to Plaintiffs' business.

### D.   THE EXISTENCE OF AN ACTUAL CONTROVERSY

25.    Ms. Millen is presently engaged in litigation in the United Kingdom regarding, inter alia, resuming use of her name commercially.

26.    Ms. Millen has publicly stated that she "will not rest until I have my company completely restored to me."

27.    Indeed, Ms. Millen's intentions have been widely reported, for example, in the Telegraph ("Karen Millen wants her name back - Designer Karen Millen fights to resume trading under her own name after losing everything in the 2008 Icelandic banking crash") and the Daily Mail ("'I won't rest until I have my company restored to me': Karen Millen sues Icelandic bank for £500m after she lost business in 2008 crash").

28.    Upon information and belief, Ms. Millen has begun an aggressive campaign to reclaim her name, not just in the UK litigation, but also in the U.S.

29.    For example, Ms. Millen retained U.S. legal counsel and recently in April 2014 filed petitions to cancel the KAREN MILLEN Marks owned by Plaintiffs.

30.    At the same time, Ms. Millen applied for U.S. Trademark Registrations for her name covering the same categories of goods currently offered by Plaintiffs under the KAREN MILLEN Marks.

31.    In fact, as a required part of Ms. Millen's trademark applications in the United States, she executed a declaration stating, inter alia, that she is "the owner of the trademark/service mark sought to be registered," or that she believes that she is "entitled to use such mark in commerce," and, brazenly declares that "to the best of her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or

in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."

32.     Accordingly, Ms. Millen has submitted a sworn declaration to the United States Trademark Office that she has superior rights to the KAREN MILLEN Marks owned by Plaintiffs, and that Plaintiffs have no right to use their KAREN MILLEN Marks in United States commerce.

33.     The proceeding in the United Kingdom addresses the issues pertaining to the United Kingdom and would leave unresolved the issue of use and registration of the Karen Millen name in the United States and the allegations made by Ms. Millen against the KAREN MILLEN Marks.

34.     Given that Plaintiffs make widespread use of the KAREN MILLEN Marks and operate numerous retail locations in the United States using the KAREN MILLEN Marks, there is a significant risk of similar or parallel proceedings being brought in the United States. Accordingly, there exists a real controversy over the use, ownership and validity of the KAREN MILLEN Marks in the United States.

35.     While Ms. Millen previously consented to Plaintiffs' use of her name as a trademark, she now challenges that right and Plaintiffs' right to register the KAREN MILLEN Marks.  Specifically, Ms. Millen contends that Plaintiffs submitted a false or fraudulent declaration to the U.S. Patent and Trademark Office that was material to the registration and the office relied on such declaration in issuing the registration and Ms. Millen has been harmed thereby.

36.     Because Plaintiffs have registrations for KAREN MILLEN, Ms. Millen's own applications for confusingly similar marks will likely be rejected by the U.S. Patent and Trademark Office in view of Plaintiffs' registrations.

37.     In addition, because Plaintiffs have priority of rights over Ms. Millen, Ms. Millen must argue that she will be harmed by the continued registration of Plaintiffs' KAREN MILLEN Marks by preventing her from conducting business under a confusingly similar name in the United States and by damage to the goodwill in her own business endeavors under a confusingly similar mark.

38.     By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment declaring their exclusive right to use and register the KAREN MILLEN Marks under 15 U.S.C. § 1119.

39.     In addition, Plaintiffs are entitled to a declaratory judgment declaring that they are not liable under 15 U.S.C. § 1120 for obtaining a false or fraudulent registration.

40.     Finally, Plaintiffs are entitled to injunctive relief restraining Ms. Millen from challenging the Plaintiffs' exclusive rights to own the KAREN MILLEN Marks, applying for trademark registrations for confusingly similar marks and further acts in breach of the Buy Out Agreement, and to recover attorneys' fees and any damages proven to have been caused by reason of Ms. Millen's aforesaid acts in breach of the Buy Out Agreement.

## COUNT I
## BREACH OF CONTRACT

41.     Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

42.     There is a contractual, quasi-contractual and/or other legal relationship between Plaintiffs and Defendant.

43.     By reason of the facts and circumstances set forth above, the Buy Out Agreement formed a valid and enforceable contract between, inter alia, Mosaic Fashions, KMFL (by and through its predecessors-in-interest), and Ms. Millen.

44.     Acting upon the mutual promises and covenants set forth in the Buy Out Agreement, Plaintiffs have performed, and continue to perform, all of their duties under the Buy Out Agreement.

45.     Defendant has, without justification, breached the Buy Out Agreement by:  (i) beginning a competing business venture in connection with her name; (ii) filing U.S. trademark applications for marks incorporating Defendant's name; (iii) attempting to use the KAREN MILLEN Marks; and (iv) initiating Cancellation proceedings in the USPTO against Plaintiffs' KAREN MILLEN Marks.

46.     As a direct result of Defendant's breach of contract, Plaintiffs have suffered direct, foreseeable, and proximate monetary losses in an amount to be proven at trial, but which, exclusive of interest and costs, is at least ten-million dollars ($10,000,000).

## COUNT II

### DECLARATORY JUDGMENT
### (PLAINTIFFS' RIGHT TO USE AND REGISTER TRADEMARKS INCOPORATING DEFENDANT'S NAME AND DEFENDANT MAY NOT USE OR REGISTER TRADEMARKS INCORPORATING DEFENDANT'S NAME)

47.     Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

48.     By reason of the facts and circumstances set forth above, the Buy Out Agreement formed a valid and enforceable contract between Mosaic Fashions, KMFL (by and through its predecessors-in-interest), and Ms. Millen.

49.     Mosaic Fashions and KMFL (by and through its predecessors-in-interest) acquired from Ms. Millen the exclusive right to use and register the KAREN MILLEN mark and any confusingly similar mark in exchange for substantial sum of money.

50.     The Buy Out Agreement further contained a restriction prohibiting Ms. Millen from using her name in subsequent business ventures.

51.     In the Buy Out Agreement, Ms. Millen granted to Mosaic Fashions and KMFL (by and through its predecessors-in-interest) Ms. Millen's express and/or implied consent to use, register and maintain any U.S. trademark incorporating her name.

52.     In the Buy Out Agreement, Ms. Millen agreed not to use the KAREN MILLEN Marks.

53.     Accordingly, Plaintiffs seek a declaration based on 15 U.S.C. § 1119 that Plaintiffs may use, apply for, register and maintain any U.S. trademark incorporating Ms. Millen's name, because Defendant has consented to Plaintiffs' use, registration and ownership of trademarks incorporating Defendant's name.

54.     Moreover, Plaintiffs seek a declaration that Defendant is not entitled to U.S. Trademark registrations for the KAREN MILLEN mark or any confusingly similar marks.

### COUNT III

### DECLARATORY JUDGMENT
### (PLAINTIFFS DID NOT PROCURE A FALSE OR FRAUDULENT REGISTRATION)

55.     Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

56.     By reason of the facts and circumstances set forth above, the Buy Out Agreement formed a valid and enforceable contract between Mosaic Fashions, KMFL (by and through its predecessors-in-interest), and Ms. Millen.

57.     Mosaic Fashions and KMFL (by and through its predecessors-in-interest) acquired from Ms. Millen consent to use her name as a trademark and register the KAREN MILLEN mark and any confusingly similar mark in exchange for a substantial sum of money.

58.     Plaintiffs properly relied on Ms. Millen's consent in submitting her prior declaration to the U.S. Patent and Trademark Office in applying for the KAREN MILLEN Marks.

59.     Accordingly, Plaintiffs seek a declaration based on 15 U.S.C. § 1120 that Plaintiffs did not procure a false or fraudulent registration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment for Plaintiffs on each and every count, and further that this Court:

A.     Award to Plaintiffs actual and compensatory damages, with interest, in an amount to be determined at trial but in no event less than ten-million dollars ($10,000,000);

B.     Award to Plaintiffs punitive and exemplary damages in an amount to be determined at trial;

C.     Grant to Plaintiffs an Order entering a permanent injunction against Defendant and those persons or entities acting in concert or participation with her who receive actual notice of the Order by personal service or otherwise from interfering with Plaintiffs' use and registration of the Karen Millen Marks at issue or any similar trademarks, whether alone or in any combination;

D.     Grant to Plaintiffs an Order for permanent injunction against Defendant and those persons or entities acting in concert or participation with her who receive actual notice of the Order by personal service or otherwise from seeking trademark registration for the KAREN MILLEN mark or any confusingly similar trademarks in the United States;

E.      Grant to Plaintiffs an Order for permanent injunction against Defendant and those persons acting in concert or participation with her who receive actual notice of the Order by personal service or otherwise from beginning a competing business venture with the KAREN MILLEN mark in the United States or otherwise using the KAREN MILLEN mark in connection with a competing business;

G.      Grant to Plaintiffs an Order enjoining and restraining Defendant from inducing, encouraging, instigating, aiding, abetting or contributing to any of the aforesaid acts;

H.      Grant to Plaintiffs an Order instructing the Defendant to dismiss, with prejudice, the Cancellation proceedings initiated by Defendant against KMFL in connection with KAREN MILLEN Marks;

I.      Grant to Plaintiffs an Order declaring that Plaintiffs have the exclusive right to register and use each of the KAREN MILLEN Marks at issue, whether alone or in any combination, and that Plaintiffs may use, apply for, register and maintain any other U.S. trademark incorporating Ms. Millen's name;

J.      Award to Plaintiffs their costs in these proceedings, together with reasonable attorney fees as may be allowed by applicable law and/or the equity powers of this Court; and

K.      Award to Plaintiffs such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs respectfully demand a trial by jury of any and all issues properly triable to a jury in the above-captioned action.

Dated: June 16, 2014

KENYON & KENYON LLP

By: _____

Erik C. Kane
VA No. 68294
KENYON & KENYON LLP
1500 K Street, N.W., Suite 700
Washington, DC 20005
Telephone: 202.220.4200
Facsimile: 202.220.4201
Email: ekane@kenyon.com

*Of Counsel*:
Michelle Mancino Marsh
Michael Kelly
Jeremy S. Boczko
KENYON & KENYON LLP
1 Broadway
New York, New York 10004
Telephone: 212.425.7200
Facsimile: 212.425.5288
Email: mmarsh@kenyon.com
          mkelly@kenyon.com
          jboczko@kenyon.com

*Attorney(s) for Plaintiffs*,
Karen Millen Fashions Limited and
Mosaic Fashions US Limited f/k/a Karen
Millen US Limited

- 14 -