**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

KAREN MILLEN FASHIONS LIMITED and
MOSAIC FASHIONS US LIMITED f/k/a
KAREN MILLEN US LIMITED

          *Plaintiffs,*

v.

KAREN DENISE MILLEN

          *Defendant.*

Civil Action No. 1:14-cv-720-CMH-TCB

**FILED BY ECF**

---

**Plaintiffs Karen Millen Fashions Limited and Mosaic Fashions US Limited
f/k/a Karen Millen US Limited's Memorandum of Law in Opposition to
Defendant Karen Millen's Motion to Dismiss the Complaint**

---

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 4

    A.    The Karen Millen Marks ......................................................................... 4

    B.    2004 Buyout Agreement .......................................................................... 6

    C.    Defendant's Personally Directed Activities in the Commonwealth ..................... 8

    D.    The Complaint ......................................................................................... 9

III.    ARGUMENT ...................................................................................................... 10

    A.    Exercising Personal Jurisdiction Over Defendant is Proper ................................ 10

         1.    Defendant has Established Sufficient Contacts with the Commonwealth of Virginia ................................................................... 10

         2.    Jurisdiction is also Proper Under the Federal Long Arm Statute ........... 13

    B.    Subject Matter Jurisdiction is Proper ................................................................. 16

         1.    15 U.S.C. § 1120 Confers Independent Subject Matter Jurisdiction ....... 16

         2.    Actual Controversy Exists Between Plaintiffs and Defendant ............... 16

         3.    Plaintiffs' Other Claims May Be Heard Under Pendent Jurisdiction ...... 19

         4.    Earlier Filed Cancellation Proceedings Do Not Preclude This Action ................................................................................................... 20

    C.    This Court is a Proper Forum to Address Plaintiffs' Allegations ....................... 21

         1.    Defendant's Actions are Inconsistent With an Exclusive Jurisdiction Provision ............................................................................ 21

         2.    The Law Favors Plaintiffs' Choice of Forum ......................................... 23

    D.    There is No Comity with the U.K. Litigation ..................................................... 25

CONCLUSION ............................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101 (D. Del. 2002) ................................... 22

*America Corp. v. Int'l Legwear Grp., Inc.*, 1:10-cv-65, 2011 WL 841364 (W.D.N.C. Mar. 4, 2011) ................................................................................................................................. 19

*Beach v. Citigroup Alternative Invsts. LLC*, 12-cv-7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ................................................................................................................................. 22

*Bldg. Constr. Enters., Inc. v. Gary Meadows Constr. Co.*, 06-cv-00092, 2007 WL 1041003 (E.D. Ark. Apr. 4, 2007) ................................................................................................... 22, 23

*Burger King v. Rudzewics*, 471 U.S. 486 (1986) .................................................................. 11, 12

*Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393 (9th Cir.1982) ................................. 18

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ...................... 25

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009) ................................. 11

*English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990) ........................................................ 11

*Fellaroy Corp. v. SPIG Indust., Inc.*, 2:09-cv-028, 2010 WL 3432283 (D.S.C. Aug. 30, 2010). 25

*Flexible Benefits Council v. Feltman*, 1:08-cv-371, 2008 WL 2465457 (E.D. Va. June 16, 2008) ................................................................................................................................ 12

*Floyd's 99 Holdings v. Woodrum*, 08-cv–01321, 2009 WL 798804 (D. Colo. March 24, 2009) 20

*FS Photo , Inc. v. PictureVision, Inc.*, 48 F. Supp. 2d 442 (D. Del. 1999) ................................. 15

*Hawes v. Network Solutions, Inc.*, 337 F.3d 377 (4th Cir. 2003) ............................................. 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................. 14

*Hiram Walker & Sons, Inc. v. Canadian Schenley Distilleries, Ltd.*, 176 U.S.P.Q. 156, 1972 WL 17204 (TTAB Oct. 12, 1972) ............................................................................................ 22

*Hofritz for Cutlery, Inc. v. Amajac Ltd.*, 763 F.2d 55, 56-57 (2d Cir. 1984) ............................. 10

*Hup Aik Huat Trading Pte Ltd. v. 900 Bags of Malabar Garbled End of Front Matter Black Pepper*, 115 F. Supp. 2d 529 (D. Md. 2000) ........................................................................ 7

*In re D.B. Kaplan Delicatessen*, 225 USPQ 342 (T.T.A.B. 1985) ............................................ 6

*In re VITAFLEX Dr. Walter Mauch GmbH*, Appeal No. 75615858, 2002 WL 1492637 (T.T.A.B. July 11, 2002) ................................................................................................................... 6

*Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco,* 329 F.3d 359 (4th Cir. 2003) ............................................................................................................ 5

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................................................................ 11

*Lismont v. Alexander Binzel Corp.*, 2:12-cv-592, 2013 WL 6095461 (E.D. Va. Nov. 18, 2013). 2, 13, 14, 15

*McGraw-Hill Co. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y. 2005)....... 22, 24, 26

*MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)...................................... 17, 18

*Montblanc-Simplo GmbH v. United Brands Int'l, Inc.*, Opposition No. 911856371, 2009 WL 408659 (T.T.A.B. Sept. 29, 2009) ................................................................. 6

*Mya Saray LLC v. Al-Amir*, 831 F. Supp. 2d 922 (E.D. Va. 2011) ............................. 19

*NBC Universal, Inc. v. NBCUNIVERSAL.COM*, 378 F. Supp. 2d 715 (E.D. Va. 2005) ....... 25, 26

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir. 1994) .. 19

*Panavision Int'l., LP v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ................................ 23

*PHC, Inc. v. Pioneer Healthcare*, 75 F.3d 75 (1st Cir. 1996) .................................... 20

*Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, 1:09-cv-550, 2009 WL 3366929 (E.D. Va. Oct. 16, 2009) ..................................................................... 14

*Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.,* 761 F. Supp. 423 (E.D.Va.1991) ........................................................................................... 11

*Royal and Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.,* 466 F.3d 88 (2d Cir.2006) 25

*Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236 (10th Cir. 2008) ............................... 18

*Touchcom, Inc. v. Bereskin & Parr*, 574 F. 3d 1403 (Fed. Cir. 2009) .......................... 10

*Unity Creations, Inc. v. Trafcon Indus., Inc.*, 137 F. Supp. 2d 108 (E.D.N.Y. 2001) ................. 22

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581 (4th Cir. 2004) ..... 17, 19, 25

*West Afr. Trading & Shipping Co. v. London Int'l Group*, 968 F. Supp. 996 (D.N.J. 1997)....... 14

*Whiting-Turner Contracting Co. v. Westchester Fire and Ins. Co.*, 13-cv-348, 2013 WL 3177881 (D. Md. 2013) ............................................................................... 8, 22

*World-Wide Volkswagen Corp. v. Woodson*, 444. U.S. 286 (1980) ............................. 11

## STATUTES

15 U.S.C. § 1051(b) ...................................................................................... 6, 8

15 U.S.C. § 1052 .......................................................................................... 19

15 U.S.C. § 1119............................................................................................ 10, 19

28 U.S.C. § 1338............................................................................................ 17

28 U.S.C. § 1367(a) ....................................................................................... 19

28 U.S.C. § 2201............................................................................................ 14, 16, 17

**RULES**

Fed R. Civ. P. 4(k)(2) ............................................................................................ 13

Fed. R. Civ. P. 12(b) ............................................................................................. 10

**TREATISES**

6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:71 (4th
ed.) ........................................................................................................................ 6

6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:85 (4th
ed.) ...................................................................................................................... 16

**OTHER AUTHORITIES**

Malla Pollack, *Litigating Counterclaim for Cancellation of Plaintiff's Trademark Registration*,
132 AM. JUR. TRIALS 433 (2013) ......................................................................... 16

Thomas H. Davis, Jr., *The Sixty-fourth Year of Administration of the U.S. Trademark (Lanham)
Act of 1946*, 102 TRADEMARK REP. 1, 31-32 (2012) ............................................ 26

## I.     INTRODUCTION

Earlier this year, Defendant Karen Millen ("Defendant" or "Ms. Millen") engaged U.S. counsel to strategically attack Plaintiffs Karen Millen Fashions Limited ("KMFL") and Mosaic Fashions US Limited f/k/a Karen Millen US Limited's ("Mosaic Fashions") (collectively, "Plaintiffs")[1] U.S. trademark holdings in the forum of her choice—one that she believed provided her with the cover to fire without being fired upon.  Having brought this dispute to the U.S. on her own accord, she now asks this Court to allow her to run back to the United Kingdom ("U.K.") to avoid liability for breach of her commitments in the 2004 Agreement for the Purchase and Sale of her former company, Karen Millen Holdings Limited (the "2004 Buyout Agreement").  Defendant was paid handsomely—more than $63,000,000 (U.S. dollars)—for the KAREN MILLEN brand name and openly permitted Plaintiffs to use the name for the past decade, develop enormous goodwill and open stores all over the United States, including in this judicial district.  *See Declaration of Michael Kelly* (*"Kelly Decl."*), ¶¶ 11-12, Ex. I. Her feigned shock that Plaintiffs, in building up all this goodwill, needed to protect its brand name with U.S. trademark registrations is pure theater.

Although content to initiate five proceedings against Plaintiffs in the Trademark Trial and Appeal Board ("TTAB") on April 8, 2014, Defendant now moves to dismiss Plaintiffs' complaint because a U.S. tribunal is allegedly unable to determine Plaintiffs' rights to the KAREN MILLEN mark.  *See* D.I. 15 (*"Def.'s Brief"*), pp. 8-12.  But, in fact, it is her filing of five cancellation proceedings in the U.S., along with contemporaneously filing her own U.S. trademark applications, which created the controversy before this Court.  *See generally* D.I. 1 (*"Complaint"*).  Now that Ms. Millen must answer for the attacks she has made in the U.S., she

---

[1]     The relationship between KMFL and Mosaic Fashion is explained in section II(A). For convenience they are referred to as Plaintiffs.

makes a desperate attempt at eleventh-hour forum shopping by seeking to add, <u>for the first time,</u> and only days before filing this motion, Plaintiffs' U.S. claims to a concurrent proceeding before a court in the United Kingdom ("U.K.").  *See Millen Decl.*, ¶ 24 ("It was [in July 2014 when] I realized that there was a threshold issue that needed to be determined once and for all, before I took additional affirmative steps to return to the fashion business and began using my name in any form, and that is whether Plaintiffs are entitled to enforce the provisions of the 2004 [Buyout] Agreement against me.").

Two months into this lawsuit, and four months after filing her five TTAB proceedings, she now claims that she may not be called to appear before this (or any) U.S. court for her actions, because she is a U.K. citizen with minimal travel to U.S., the parties' contract is governed by U.K. law, and the parties' disputes concerning the contract must allegedly be adjudicated in the U.K.  *Def.'s Brief*, p.1.  In reality, she objects to this Court—a court of general jurisdiction that is well equipped to hear Plaintiffs' breach claim, Lanham Act claims, and award damages thereon—because she wants her claims heard by the TTAB, an administrative tribunal of limited jurisdiction that cannot award monetary damages and where Plaintiffs cannot bring counterclaims.  Importantly, Defendant's motion neglects to cite to this Court's ruling in *Lismont v. Alexander Binzel Corp.*, 2:12-cv-592, 2013 WL 6095461 (E.D. Va. Nov. 18, 2013).  In *Lismont*, this Court ruled that an individual's signing and submission of documents to the United States Patent and Trademark Office ("USPTO") to perfect intellectual property rights "is sufficient to establish minimum contacts with the United States."  *Id.* at *7.

Defendant has also misled this Court to believe that the issues pertaining to this lawsuit should and will be addressed by the parties' concurrent U.K. litigation.  The U.K. action was brought to prevent Ms. Millen from infringing Plaintiffs' U.K. and European community

trademarks, and passing-off her goods as or for those of Plaintiffs.  Whether Plaintiffs acquired

the right to register and use Defendant's name under the 2004 Buyout Agreement was <u>never</u> at

issue in that lawsuit, even after nearly three years of litigation (that is until Defendant's August

22, 2014 request to add the issue).  Moreover, despite her sudden epiphany that this "threshold

issue" may only be addressed in the U.K., she has <u>not</u> withdrawn her petitions for cancellation or

applications for registration in the U.S.  *See Millen Decl.*, ¶ 24; *Kelly Decl.*, Ex. A.  Further, it is

unreasonable to ask for this Court to defer to a U.K. court to consider whether Ms. Millen

properly consented to registration of her name in the U.S., and, therefore, is entitled to U.S.

trademark registrations.  Although that decision will require, in part, the interpretation of the

2004 Buyout Agreement, it will also necessitate a determination of rights under the Lanham Act.

Further, should this Court dismiss Plaintiffs' claims, as Defendant moves this Court to

do, it is the TTAB who will determine which party may register U.S. trademarks for the KAREN

MILLEN brand.  That determination will require, among other things, discovery on the 2004

Buyout Agreement (as it would in this Court) and require the TTAB to determine its impact on

her claim that she did not consent to the routine filing of U.S. trademark applications for the

KAREN MILLEN brand name (again, as could this Court could do).

Defendant's objection to this Court's subject matter jurisdiction is similarly unavailing.

Although she now claims to not have alleged Plaintiffs' registrations are either false or

fraudulent (apparently because the term "fraud" was carefully avoided in her petitions for

cancellation), her argument is irreconcilable with her challenge to those registrations.

Defendant's petitions for cancellation are clear—she accuses Plaintiffs of obtaining their

registrations through the submission of a "purported" affidavit from her—without her

permission.  *Millen Decl.*, Ex. C.  If such submission was made of an improper, unauthorized

consent, that is the definition of false or fraudulent.  Thus, this subject matter is squarely before

this court pursuant to 15 U.S.C. § 1120.  Plaintiffs' additional claims (which arise from the same

legal question) may also be heard under pendent jurisdiction.

In sum, Defendant is not motivated by a realization that it is improper for this Court to

adjudicate this dispute.  Rather, now regretting her decision to attack Plaintiffs in the U.S.

(thinking that she could obtain leverage over them in the U.K. litigation), she makes self-serving

arguments to tactically avoid the jurisdiction of this Court.

## II.    FACTUAL BACKGROUND

### A.    The Karen Millen Marks

This case arises from an undisputed attempt by Ms. Millen to invalidate Plaintiffs' U.S.

trademark registrations so she may start her own competing fashion, cosmetics, and housewares

business in the U.S.  *See Complaint*, ¶¶ 19-24; *see also Def.'s Brief* at 6.  For over thirty years,

Plaintiffs and their predecessors-in-interest have manufactured and marketed fashion apparel and

other goods using the distinctive KAREN MILLEN mark, which they have used both as a

trademark and corporate identifier.  KMFL (the corporate parent to the Karen Millen brand) is

the registered trademark holder of U.S. Trademark Registration Nos. 3,469,389 (KAREN

MILLEN), 3,570,233 (KAREN MILLEN), 3,988,125(KAREN MILLEN), 4,322,741 (KAREN

BY KAREN MILLEN), and 4,412,747 (KM BY KAREN MILLEN) (collectively, "KAREN

MILLEN Marks"), and owns all of the common law trademark rights to the name in the U.S.

*Complaint*, ¶¶ 12-18.   Mosaic Fashion US Limited (an affiliate to KMFL) is the corporate entity

which operates the Karen Millen brands U.S. business and sells its goods through its thirteen

brick and mortar stores throughout the U.S., including in McLean, Virginia, as well as through

several prominent U.S. retailers.  *See Kelly Decl.*, ¶ 10; Ex. H.  As a result of Plaintiffs' long

4

standing and extensive use of the KAREN MILLEN brand name, not only have those marks become well known and well received throughout the world, the general consuming public in the U.S. recognize these marks as exclusively associated with Plaintiffs. *Id.*, at ¶¶ 15-18. They are valuable assets of Plaintiffs, and Defendant's actions are of particular cause for concern given her attempt to commandeer those trademarks as part of an admitted strategy to take back that which she has been paid significantly for. *See Id.*, at ¶¶ 28-35; *see also Def.'s Brief*, at 6.

As shareholder and officer of Karen Millen Holdings Limited ("KMHL"), Defendant actively participated in the filing of U.S. trademark applications in connection with the KAREN MILLEN Marks. Not only did she grant express written consent to that company to file U.S. trademark applications incorporating her name (in accordance with § 2(c) of the Lanham Act), but, in her capacity as "owner" of Karen Millen Limited (a subsidiary of KMHL), Defendant continued to prosecute and personally sign USPTO submissions through at least 2003. *See Kelly Decl.*, Ex. K, L. Defendant's recent filing of several trademark cancellation actions can only be described as pernicious in nature, because, at most, she can only hope to cancel Plaintiffs' trademark registrations without gaining her own right to use. That is because all U.S. trademark rights stem from use in commerce, not registration; therefore, Defendant can never achieve priority over Plaintiffs' undisputed extensive use. *See generally Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco,* 329 F.3d 359, 364 (4th Cir. 2003) ("[T]here is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. . . . [T]he right to a particular mark grows out of *its use*, not its mere adoption.") (quoting *United Drug Co. v. Theodore Rectanus, Co.*, 248 U.S. 90, 97 (1918)) (emphasis added).

Moreover, her own declaration before this Court renders her applications void, because an applicant may not claim a *bona fide* intent to use a trademark under § 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), where it has made its application contingent on the resolution of a cancellation or opposition proceeding.[2] *Montblanc-Simplo GmbH v. United Brands Int'l, Inc.*, Opposition No. 911856371, 2009 WL 408659, at *7 (T.T.A.B. Sept. 29, 2009); *see also Millen Decl.*, ¶ 22.

**B.      2004 Buyout Agreement**

As set forth in Plaintiffs' Complaint, Defendant and her partner sold her business in the 2004 Buyout Agreement in exchange for £35 million pounds sterling[3] (as well as other consideration in the form of Stock and Loan Notes). *Kelly Decl.*, Ex. I; *Millen Decl.*, Ex. A, at § 3. In exchange for that sum, Defendant agreed not to make commercial use of her name in similar or competing business ventures, and agreed not to use the KAREN MILLEN Marks. *Millen Decl.*, Ex. A, at § 5. Defendant also conveyed all intellectual property rights to her name, including the consent to the use and filing of new trademark registrations. *Id.*, at Schedule 2 (§§ 8.3, 8.7, 25.1). That Agreement makes clear that intellectual property rights include both "registered or unregistered" trademarks and "applications or rights to apply for them[.]"[4] *Id.*, at Schedule 2 (definitions).

---

[2] Ms. Millen also committed a fraud upon the USPTO when swearing in her applications that "to the best of [her] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely. . . ." *See Millen Decl.*, Ex. D, p. 9; *see also* 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:71 (4th ed.) ("[I]f an applicant clearly knows that its company does not own the mark, or responds to an examiner's enquiry with a knowingly false statement that the mark was assigned to applicant, then fraud is proven.").

[3] £58,208,056 (pounds sterling) = $63,787,500.00 (U.S. dollars) (as of June 25, 2004). *See Kelly Decl.*, ¶ 12, Ex. J.

[4] Courts have consistently held that a full buyout agreement constitutes general consent to use, maintain and register trademarks incorporating the party to the agreement's name. *See, e.g.*, *In re D.B. Kaplan Delicatessen*, 225 USPQ 342, 344 (T.T.A.B. 1985): *see also In re VITAFLEX Dr. Walter Mauch GmbH*, Appeal No. 75615858, 2002 WL 1492637, at *2-*3 (T.T.A.B. July 11, 2002).

Contrary to Defendant's unsupported accusation that Plaintiffs were not parties to the 2004 Buyout Agreement, the evidence presented in this case will show that Mosaic Fashions is a group member of the agreement, and can therefore enforce the rights granted thereunder.  *See Def.'s Brief*, 5-6; *see also Millen Decl.*, Ex. A, at p. 7; *see also Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989) (prior to discovery the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction").  Moreover, on a motion to dismiss for lack of jurisdiction, the validity and enforceability of the contract is not before the Court.  *Hup Aik Huat Trading Pte Ltd. v. 900 Bags of Malabar Garbled End of Front Matter Black Pepper*, 115 F. Supp. 2d 529, 534 n.4 (D. Md. 2000) (*"*Intervenors also present arguments which go to the merits of plaintiff's claim.  Since these arguments do not relate to the jurisdictional issues presented by their motion to dismiss, they will not be addressed here.").

In addition to the rights granted thereunder, the Agreement includes separate governing law and forum selection provisions.  *Millen Decl.*, Ex. A, at § 21.2.  However, unlike Defendant's interpretation, the plain language of the forum selection provision does not provide an exclusive jurisdiction on all issues.  *Id.*  The provision merely states that in the event of a breach, the parties agree not to contest the jurisdiction of a United Kingdom court and "submit" to it.  *Id.*

> In relation to any legal action or proceeding to enforce this Agreement or arising out of or in connection with this Agreement ("Proceedings") each of the parties irrevocably *submits to the jurisdiction of the English courts* and waives any objection to Proceedings in such courts on the grounds of venue or on the grounds that the Proceedings have been brought in an inconvenient forum.

7

*Id.* (emphasis added).  The agreement is, otherwise, silent on submission to the jurisdiction of international tribunals.  *See id.*

In the event this Court construes this provision as requiring the exclusive jurisdiction of English courts, then Defendant's prior action must constitute waiver of its enforcement.  Despite her present argument that matters pertaining to or "arising" from the 2004 Buyout Agreement must be raised before an English court, Defendant nonetheless initiated five administrative proceedings against Plaintiffs before the TTAB.  Only after Plaintiffs filed the instant action in response to those proceedings did Defendant seek to invoke the Agreement's forum selection clause.  *See Millen Decl.*, ¶ 24.  It is clear that Defendant's invocation of that provision is solely to avoid the jurisdiction of this Court, but not the jurisdiction of the TTAB where she continues to serve as plaintiff.  Because Defendant's actions are inconsistent with the enforcement of an exclusive jurisdiction provision, she has waived her right to its enforcement.  *See Whiting-Turner Contracting Co. v. Westchester Fire and Ins. Co.*, 13-cv-348, 2013 WL 3177881, at *4 (D. Md. 2013) (stating a party waives its right to enforce an exclusive jurisdiction after it initiates legal proceedings inconsistent with that clause's enforcement).

### C.        Defendant's Personally Directed Activities in the Commonwealth

Nearly three years after Plaintiffs' filed a trademark lawsuit against Defendant in the U.K., Defendant has launched a calculated campaign to harm the KAREN MILLEN brand in the U.S., and in so doing has taken several actions in the Commonwealth to usurp Plaintiffs' U.S. intellectual property rights.  On April 2, 2014, Defendant's U.S. Counsel (at her direction) filed five separate litigations against Plaintiffs before the TTAB to cancel the KAREN MILLEN Marks.  *Millen Decl.*, ¶ 20.  Soon thereafter, on April 8, 2014, Defendant directed her U.S. counsel to file five U.S. trademark applications, all pursuant to 15 U.S.C. § 1051(b) (requiring a

declaration of Defendant's *bona fide* intent to use those trademarks in U.S. commerce). *Millen Decl.*, ¶ 21.

Defendant never considered her actions in the USPTO (which resides in this jurisdiction), or her intent to start a competing fashion apparel, beauty products, and housewares lines in the U.S. to be at issue in the U.K. litigation. It is only after more than two months from receiving a copy of the Complaint, and after four months from taking her own action in the USPTO, that Ms. Millen now argues that the U.K. court has exclusive jurisdiction to resolve the parties' rights under the 2004 Buyout Agreement. *See Millen Decl.*, ¶ 24. However, that litigation has not, to date, dealt with the 2004 Buyout Agreement (except as background context), and has not, to date, dealt with the right to use and register the KAREN MILLEN Marks outside of the U.K.[5] Declaration of Ian Dafydd Austin ("*Austin Decl.*"), ¶ 5. Accordingly, unless Ms. Millen's proposed re-amendments to the U.K. court are allowed, the question of whether she has breached the 2004 Buyout Agreement will currently not arise in the U.K. proceedings. In reality, Ms. Millen thought she had an opportunity to obtain leverage over Plaintiffs by attacking their property rights in the U.S., but now regrets that decision having exposed herself to liability.

## D.    The Complaint

On June 16, 2014, Plaintiffs filed the instant action alleging several causes of action against Defendant all of which stem from her scheme to hijack their U.S. trademark rights. In that regard, Plaintiffs' Complaint seeks declaratory judgments that Plaintiffs' are the rightful owners of the KAREN MILLEN Marks in the U.S. and that their registrations are not "false or fraudulent." In her petitions for cancellation, Ms. Millen has unequivocally accused Plaintiffs of

---

[5]    Plaintiffs referred to clause 5 of the Buyout Agreement in the Re-Amended Particulars of Claim in the U.K. litigation for the sole reason to establish that Defendant knew that she was contractually prohibited from using "KAREN MILLEN" or any other name confusingly similar thereto after executing the 2004 Buyout Agreement. *Austin Decl.*, ¶ 6. Such knowledge goes, *inter alia*, to the question of whether Defendant would be acting in good faith if she traded under her own name in the U.K. *Id.*

knowingly submitting a false consent to obtain registration, and alleges injury by these trademarks' continued registration.   *See Millen Decl.*, Ex. C, at ¶¶ 4-5.  As this subjects Plaintiffs to potential civil liability and creates controversy over the rights to the KAREN MILLEN Marks, Plaintiffs have therefore requested this Court to declare that the KAREN MILLEN trademark registrations are not "false and fraudulent" under 15 U.S.C. § 1120. Plaintiffs also seek a declaratory judgment of their exclusive right to register and use the KAREN MILLEN Marks under 15 U.S.C. § 1119, and have sought remedies in connection with Ms. Millen's breach of the 2004 Buyout Agreement.

## III.   ARGUMENT

The burden on Plaintiffs "is simply to make a *prima facie* showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge," in view of the Court's obligation to "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  *Combs*, 886 F.2d  at 676; *see also Hofritz for Cutlery, Inc. v. Amajac Ltd.*, 763 F.2d 55, 56-57 (2d Cir. 1984) (in deciding the motion to dismiss under Fed. R. Civ. P. 12(b), a court will accept as true the facts appearing in the non-moving party's papers).  As set forth in this Memorandum, Plaintiffs have made out more than a *prima facie* case for jurisdiction. Therefore, Defendant's motion to dismiss should be denied.

### A.   Exercising Personal Jurisdiction Over Defendant is Proper

#### 1.   Defendant has Established Sufficient Contacts with the Commonwealth of Virginia

Under Rule 4(k)(1)(A), "a federal court addressing personal jurisdiction over a defendant approaches such an inquiry by analyzing the long-arm statute and governing principles of the forum state."  *Touchcom, Inc. v. Bereskin & Parr*, 574 F. 3d 1403, 1410 (Fed. Cir. 2009).

However, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).  The Due Process Clause requires consideration of two inquiries when determining whether a foreign defendant is subject to personal jurisdiction: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry.  *Id.* at 277-78.  As set forth below, Defendant took calculated and intentional action against Plaintiffs in the Commonwealth to harm their business in the Commonwealth and the U.S. generally.  *See Burger King v. Rudzewics*, 471 U.S. 486, 475 n.18 (1986) (even a "single-act" is sufficient to invoke jurisdiction as long as it was purposeful).  Defendant's self-serving statements about being a "Member of the Order of the British Empire" who has only traveled to the U.S. twice in the past five years are legally meaningless.  *See Millen Decl.*, ¶¶ 7, 14; *see also Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.,* 761 F. Supp. 423, 426 (E.D.Va.1991) ("A defendant need not ever physically enter Virginia in connection with the disputed transaction . . . .").

Defendant also need not have "continuous and systematic" contacts with the Commonwealth for this Court to have jurisdiction over her.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945); *English & Smith v. Metzger*, 901 F.2d 36, 39 n.4 (4th Cir. 1990) (finding formal place of contracting and governing law less important than "extent of [defendant's] contacts" with Virginia).  Rather, she is subject to personal jurisdiction because she sought a tactical advantage over Plaintiffs by availing herself to the benefits and privileges of the law such that she "should reasonably anticipate being haled into court []here."  *World-Wide Volkswagen Corp. v. Woodson*, 444. U.S. 286, 297 (1980); *see also Consulting Eng'rs Corp.*, 561 F.3d at 278.  Defendant initiated five separate U.S. administrative proceedings against

11

Plaintiffs' KAREN MILLEN Marks and filed five of her own U.S. trademark applications.  She

neither sought to confer with Plaintiffs regarding her objections to their U.S. trademark

registrations, nor did she request that the U.K. court opine on the 2004 Buyout Agreement's U.S.

implications prior to August 22, 2014.  *See Millen Decl.*, ¶ 24; *see also* D.I. ("*Blum Decl.*"), ¶ 18,

Ex. C.  As Ms. Millen is well aware (and is surely her motivation) these actions are not *de*

*minimis*, and will cause substantial damage Plaintiffs' business.  *See Complaint*, ¶¶ 28-35; *see*

*also Burger King v. Rudzewics*, 471 U.S. 486, 475 n.18 (1986) (even a "single-act" is sufficient

to invoke jurisdiction as long as it was purposeful).  Defendant also misleads this Court in

portraying Plaintiffs as foreign entities with no presence in the Commonwealth.  *See Def.'s Brief*,

p. 1.  In reality, Plaintiffs have significant presence in the Commonwealth, including two stores,

as well as, sales to several other retailers.  *Kelly Decl*. Ex. H.  In sum, Ms. Millen could hardly be

shocked that her actions in the U.S. could have led to her to this Court.

Defendant also argues that the "government contacts" exception precludes this Court

from asserting specific jurisdiction over activities within the USPTO (*see Def.'s* Brief, p. 11), but

once again has neglected to cite relevant precedent from this Court.  In *Flexible Benefits Council*

*v. Feltman*, this Court found that *prima facie* allegation of fraud based on submissions to the

USPTO did fall within the Commonwealth's long-arm statute and jurisdiction was not precluded

under the "government contacts" theory. 1:08-cv-371, 2008 WL 2465457, *4 (E.D. Va. June 16,

2008).

Ms. Millen's actions in the USPTO were not isolated, insignificant acts.  She

intentionally went outside of the U.K. litigation to take advantage of the administrative remedies

offered by the TTAB in a concerted attempt to harm Plaintiffs' intellectual property rights in the

U.S.  Although she now claims to have never intended to register or use the KAREN MILLEN

Marks until the TTAB resolved the issues raised in her cancellation proceedings, she has never made any such statements to Plaintiffs or the USPTO.  *See Combs,* 886 F.2d at 676 (prior to discovery the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."); *see also Millen Decl.*, ¶ 22.  Defendant's sudden self-serving statements should therefore be disregarded (much like her sudden realization that a U.S. tribunal is not permitted to address these claims).

Second, it is entirely reasonable (and ironic that Plaintiff now objects) to litigate these issues before this Court.  It was Defendant who recognized these issues were not addressed by the U.K. litigation, hence her decision to initiate five cancellation proceedings against Plaintiffs' trademark registrations in the USPTO.  *See Millen Decl.*, ¶ 20.  It is self-evident that Defendant's sudden objection to a U.S. tribunal determining the rights and privileges granted under the 2004 Buyout Agreement is purely a matter of self-interest; she has made no such objection before the TTAB, and as the plaintiff in those proceedings, purposefully selected the U.S. as the forum.

## 2.      Jurisdiction is also Proper Under the Federal Long Arm Statute

In the event specific personal jurisdiction may not be properly asserted over Ms. Millen, this Court need not look further than her declaration to assert jurisdiction under the federal long-arm statue, Fed R. Civ. P. 4(k)(2).  *See Millen Decl.*, ¶¶ 2-7.   Rule 4(k)(2) allows for personal jurisdiction for claims arising under federal law based on the defendant's "contacts with the United States as a whole."  *Lismont*, 2013 WL 6095461 at *6.  If Ms. Millen is not subject to personal jurisdiction based on her Virginia contacts under Rule 4(k)(1), as she claims, she is

subject to personal jurisdiction based on her nationwide contacts.[6]  Further, Plaintiffs' claims against Defendant comply with the federal long-arm jurisdiction requirements, namely: (1) their claims arise under federal law; (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law.  *Id.*

Two of Plaintiffs' three claims are made pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and rely on two separate sections of the Lanham Act.   The third claim, for breach of contract, also "arises" under federal law as it alleges Defendant breached the 2004 Buyout Agreement through her activities in the USPTO and requires the Court to construe the parties' rights under various sections of the Lanham Act.  "Although the nexus necessary to satisfy the 'arise out of or related to' requirement of the due process inquiry has not been clearly delineated by the Supreme Court," courts have granted significant "flexibility and signal[ed] a relaxation of the applicable standard from a pure 'arise out of' standard." *Lismont*, 2013 WL 6095461, at *9 (finding plaintiff's claim for unjust enrichment claim "arose" under the patent application at issue) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1330 (Fed.Cir.2008)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 n.10 (1984) (declining to address whether there should be a "distinction between controversies that 'relate to' a defendant's contacts with a forum and those that 'arise out' of such contacts"). In the event that this Court finds any of Plaintiffs' claims do not arise under federal law, it may also exercise pendent jurisdiction over Defendant with respect to those related claims. *See West Afr. Trading & Shipping Co. v. London Int'l Group*, 968 F. Supp. 996, 999 (D.N.J. 1997) (noting

---

[6] Under Rule 4(k)(2), a plaintiff is not required to prove lack of jurisdiction in every state.  *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, 1:09-cv-550, 2009 WL 3366929, at *7 (E.D. Va. Oct. 16, 2009). "Instead, this factor is met if the defendant does not identify another state court in which the suit could proceed." *Id.* (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 461 (9th Cir. 2007).

that Rule 4(k)(2) was intended to reach not only federal question cases, but all claims arising

under substantive federal law); *FS Photo , Inc. v. PictureVision, Inc.*, 48 F. Supp. 2d 442, 445

(D. Del. 1999) (finding pendent jurisdiction over defendants for claim arising under state law).

Second, Defendant has not identified a single forum state in which she would be subject

to jurisdiction, and indeed claims that her only connections to the U.S. are her trademark

applications and the cancellations proceedings she initiated against Plaintiffs' trademark

registrations. *See Millen Decl.*, ¶ 7. Unless this Court finds personal jurisdiction for Defendant's

actions before USPTO in the Commonwealth, it is possible that jurisdiction could not be

obtained in any forum state.

Third, the Court's exercise of personal jurisdiction comports with constitutional

considerations, because Defendant has misused the administrative process of the TTAB as part

of a scheme to harm Plaintiffs and obtain leverage over them.  Although Defendant cites several

cases outside this Circuit to argue that her submissions to TTAB and USPTO cannot subject her

to personal jurisdiction, she conspicuously fails to mention this Court's decision on just that

point.  In *Lismont v. Alexander Binzel Corp.*, a foreign inventor filed a lawsuit in the Eastern

District of Virginia seeking correction of inventorship, unjust enrichment and patent

infringement, similar to the lawsuits he had already filed against the defendants in Germany.

2013 WL 6095461, *2.  Defendants argued that the court lacked jurisdiction, because their sole

contact with the U.S. in connection with the plaintiff's claims was their single U.S. patent

application (based on an international patent application).  *Id.* at *4.  However, this Court found

that there was general jurisdiction under the federal long-arm statute, because a single patent

application can establish minimum contacts with the U.S., even where that application was filed

by a U.S. attorney on behalf of a foreign party.  *Id.* at *7-*9.  Thus, based on Defendant's own

15

admitted actions in this case (*see Millen Decl.*, ¶¶ 20-21), this Court may exert personal jurisdiction over her.

### B.       Subject Matter Jurisdiction is Proper

#### 1.       15 U.S.C. § 1120 Confers Independent Subject Matter Jurisdiction

Section 38 of the Lanham Act, 15 U.S.C. § 1120, affords anyone who has been harmed by the false or fraudulent procurement of a federal registration to seek damages, and provides an independent basis for subject matter jurisdiction.  6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:85 (4th ed.) ("Lanham Act § 38 provides an independent basis for federal jurisdiction in the federal courts as an action 'arising under' the Lanham Act."); *see also* Malla Pollack, *Litigating Counterclaim for Cancellation of Plaintiff's Trademark Registration*, 132 AM. JUR. TRIALS 433 (2013) (case law survey finds that 15 U.S.C. § 1120 creates independent basis for subject matter jurisdiction).  Thus, if a plaintiff can demonstrate a reasonable interest in being protected against the use of "false or fraudulent declaration or representation" in procuring a trademark registration, a court must exert subject matter jurisdiction.  *See* 15 U.S.C. § 1120.

#### 2.       Actual Controversy Exists Between Plaintiffs and Defendant

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201. "[I]t is elementary that a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the

parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201). For purposes of the Declaratory Judgment Act, the phrase "case or actual controversy" refers to the same types of "cases" and "controversies" deemed justiciable under Article III of the U.S. Constitution. *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (internal citation omitted).

Defendant erroneously argues that jurisdiction over a Declaratory Judgment action must include an allegation of infringement (*see Def.'s Brief*, p. 14); instead, jurisdiction is proper so long as independent jurisdiction is afforded under the Lanham Act. *See Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 382-83 (4th Cir. 2003) (finding independent jurisdiction under 28 U.S.C. § 1338 for a Lanham Act claim). Although Ms. Millen now professes that she never accused Plaintiffs of fraudulently filing a "purported" affidavit from her to obtain the KAREN MILLEN trademark registrations, her accusations are clear:

> (1)  Without informing Ms. Millen and without her permission, Plaintiffs filed applications to register the KAREN MILLEN Marks. *Millen Decl.*, Ex. C, at ¶ 4.
>
> (2)  To obtain those trademark registrations, Plaintiffs used an old "consent to use" affidavit from Ms. Millen that had been previously rejected by the USPTO on the grounds that it was not a "consent to register" and was only intended for an earlier application filed by KML. *Id.*, at ¶¶ 4-5.
>
> (3)  Ms. Millen is and will be injured by Plaintiffs KAREN MILLLEN trademark registrations. *Id.*, at ¶ 9.

*Millen Decl.*, Ex. C; *see also Def.'s Brief*, p. 17.

Defendant's strategy for this motion is clear—avoid liability in this Court by repudiating (or denying) virtually everything she stated before the USPTO. First, she swore to the USPTO that she had a *bona fide* intent to use the Karen Millen marks (but now states her intent was

conditional in this dispute).  *See Millen Decl.*, Ex. D, p. 9; *see also Millen Decl.*, ¶ 22.  Then, she

filed five TTAB actions that involve the same issues surrounding Plaintiffs' KAREN MILLEN

trademark registrations as raised before this Court (but now argues that a "threshold issue" needs

to be resolved in the U.K.).  *See Millen Decl.*, ¶ 20, Ex. C.   Finally, she accused Plaintiffs of

knowingly submitting a false affidavit to obtain their trademark registrations (but now argues

that she never actually used the word "fraud").  *See Millen Decl.*, Ex. C, at ¶¶ 4, 7; *see also*

*Millen Decl.*, ¶ 24; *Def.'s Brief* at 17.

It is also telling that Ms. Millen has never rescinded any of her allegations made in her

petitions for cancellation or her applications for registration.  *See MedImmune*, 549 U.S. at 127

(explaining a court must consider the totality of the circumstances when determining whether a

controversy exists"); *see also Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th

Cir.1982) (holding that Plaintiff had alleged a reasonable apprehension of an infringement

lawsuit based on Defendant's TTAB opposition action in part because "a decision of the Patent

and Trademark Office allowing the registration of [the Defendant's] trademark would not

preclude a subsequent infringement action or be determinative of the issues involved"); *Surefoot*

*LC v. Sure Foot Corp.*, 531 F.3d 1236, 1246-47 (10th Cir. 2008) ("Most importantly of all, were

we to hold TTAB opposition filings as a class irrelevant to Article III analysis, we would

disregard the Supreme Court's direction that, in assessing whether a live controversy exists

between the parties, we must both take into account 'all the circumstances' before us. . . .").

In sum, as a clear controversy over Plaintiffs' exclusive right to the KAREN MILLEN

trademark registrations exists, subject matter is therefore properly and independently conferred

for Plaintiffs request for declaratory judgment that its registrations are not "false or fraudulent"

registrations.  *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572,

577 (7th Cir. 1994) (stating that purpose of Declaratory Judgment Act is to avoid accrual of

avoidable damages to party uncertain of its rights) (internal citations omitted); *see also America*

*Corp. v. Int'l Legwear Grp., Inc.*, 1:10-cv-65, 2011 WL 841364, *6 (W.D.N.C. Mar. 4, 2011)

("Not all trademark cases involving a contract issue devolve into common law claims depriving

the court of federal jurisdiction.  'As long as the complaint asks for a remedy expressly provided

by the [Lanham] Act, the suit fits squarely' into federal questions jurisdiction.") (internal

citations omitted).

### 3. Plaintiffs' Other Claims May Be Heard Under Pendent Jurisdiction

Jurisdiction over Plaintiffs claims under 15 U.S.C. § 1119 and for breach of contract

may be heard under pendent jurisdiction.  *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of

which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy. . . ."); *see also Volvo Constr.*

*Equip. N. Am.*, 386 F.3d at 594 (affirming the district court's decision to grant jurisdiction over a

declaratory judgment action seeking to "clarif[y] and settl[e]" the parties' intellectual property

rights and obligations, because "it eliminated uncertainty regarding those agreements, and it

clarified the contractual rights of the parties").

Both Plaintiffs' request for remedies under 15 U.S.C. § 1119 and for breach of contract

are intricately connected to whether Plaintiffs' obtained valid written and/or general consent

from Defendant pursuant § 2(c) of the Lanham Act, 15 U.S.C. § 1052.  *See Mya Saray LLC v.*

*Al-Amir*, 831 F. Supp. 2d 922, 928 (E.D. Va. 2011) (supplemental jurisdiction is appropriate

where "state and federal claims share a substantial and related claim").  Thus, the Court may

exercise pendent jurisdiction over the remaining claims.

### 4.      Earlier Filed Cancellation Proceedings Do Not Preclude This Action

The mere fact that Defendant filed proceedings before the TTAB does not shield her from liability for her actions there and elsewhere.

First, independent of an earlier filed agency proceeding, a court may entertain a declaratory judgment action addressing the same rights where there is an independent basis for jurisdiction over the action under the Lanham Act.  *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1158-59 (9th Cir. 2007) (finding earlier filed cancellation proceedings did not preclude a declaratory judgment action where there was an independent basis for jurisdiction).  Second, contrary to Defendant's contention, the primary jurisdiction rationale does not justify deferral of "a trademark declaratory relief action pending the completion of related TTAB proceedings."  *Id.* at 1162; *see also PHC, Inc. v. Pioneer Healthcare,* 75 F.3d 75, 80 (1st Cir. 1996)) (finding a court action should not defer to ongoing TTAB proceeding based on primary jurisdiction concerns); *Def.'s Brief*, p. 16.  Third, any determinations made by the TTAB in response to Defendant's cancellation proceedings will invariably be readdressed by this Court.  *See Rhoades*, 504 F.3d at 1163 ("Under these circumstances awaiting the Board's action is less attractive; and this is doubly so because (as already noted) its administrative findings can so easily be relitigated in court.").

Moreover, when issues brought before the TTAB are the same as those raised in a later action, the TTAB's decision to suspend its proceedings in favor of the district court proceedings indicates its intention "to defer to this Court's consideration of the issues." *Floyd's 99 Holdings v. Woodrum*, 08-cv–01321, 2009 WL 798804, at *7 (D. Colo. March 24, 2009) (finding there to be no concern of "short circuit[ing]" the TTAB where the TTAB has agreed to suspend its proceedings in favor of the district court).  Here, the TTAB's decision to suspend Defendant's

cancellation proceedings in view of this lawsuit should be understood as its intention to defer to this Court's consideration of the issues. *See Kelly Decl.*, Ex. F.

### C.     This Court is a Proper Forum to Address Plaintiffs' Allegations

#### 1.     Defendant's Actions are Inconsistent With an Exclusive Jurisdiction Provision

The 2004 Buyout Agreement's forum selection clause requires the parties to "submit" the jurisdiction of the English courts, but is silent as to the jurisdiction of other courts. *Millen Decl.*, Ex. A, § 21.2. The intent of the forum selection provision was to create a non-controversial forum in the event a dispute arose; it was not intended to grant English courts the exclusive jurisdiction over all disputes arising from the Agreement.

Notwithstanding an ongoing lawsuit between the parties in the U.K., Defendant elected to file five lawsuits against Plaintiffs before the TTAB. *Millen Decl.*, ¶ 20, Ex. C. Neither Defendant nor her U.S. or U.K. attorneys considered these actions in violation of the purported exclusive jurisdiction provision. The forum selection is clear in that it applies to "any legal action or proceeding" "arising out of or in connection with this Agreement." *Millen Decl.*, Ex. A, at § 21.2. Now that Ms. Millen is herself subject to a lawsuit arising from that Agreement, she seeks to construe the provision as mandating the exclusive jurisdiction of English courts to construe the parties rights to trademarks in the U.S. Apart from her construction of the forum selection provision, the legal proceedings she initiated before the TTAB continue, in violation of the supposed exclusive jurisdiction of English courts.

Furthermore, regardless of whether the 2004 Buyout Agreement's forum selection clause is permissive or mandatory, Defendant has waived her right to enforce that clause after filing her own lawsuit against Plaintiffs outside of that jurisdiction. A forum-selection clause may be deemed waived if: "(1) the party invoking the clause has taken actions inconsistent with it or has

delayed its enforcement, and (2) the other party would be prejudiced by its enforcement." *Whiting-Turner Contracting Co.*, 2013 WL 3177881, at *4.

Ms. Millen does not deny that her actions in the TTAB and the USPTO are governed by the agreement (*see Millen Decl.*, ¶ 24), but only "realized" the superiority of the forum selection clause after Plaintiffs filed suit against her for breach of contract.  It is inequitable for Ms. Millen to sue Defendant's outside of the purported exclusive jurisdiction, but deny that same right to Plaintiffs, particularly when Plaintiffs' lawsuit is a direct result of Defendant's lawsuits.  *See, e.g.*, *Beach v. Citigroup Alternative Invsts. LLC*, 12-cv-7717, 2014 WL 904650, at *8 (S.D.N.Y. Mar. 7, 2014); *Bldg. Constr. Enters., Inc. v. Gary Meadows Constr. Co.*, 06-cv-00092, 2007 WL 1041003, at *4 (E.D. Ark. Apr. 4, 2007) (ruling plaintiff has waived its right to enforce the parties' agreement's exclusive jurisdiction clause by filing suit outside that jurisdiction); *Unity Creations, Inc. v. Trafcon Indus., Inc.*, 137 F. Supp. 2d 108, 111-12 (E.D.N.Y. 2001).

Even more telling is the fact that Defendant has not withdrawn her petitions for cancellation, proceedings that will require the TTAB to construe the parties' right to register and use the KAREN MILLEN Marks in the U.S.  Defendant is well aware that the U.K. court is powerless to enforce its ruling with the USPTO, which thus provides her with two separate venues to contest Plaintiffs' U.S. trademark rights.  *See McGraw-Hill Co. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 255 (S.D.N.Y. 2005) ("Indeed, it is well-established that 'decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible' in United States courts hearing Lanham Act claims."); *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101, 110 (D. Del. 2002) (stating a foreign patent court's ruling is not binding on, or persuasive to, a U.S. court); *Hiram Walker & Sons, Inc. v. Canadian Schenley Distilleries, Ltd.*, 176 U.S.P.Q. 156, 1972 WL 17204, at*3 (TTAB Oct. 12, 1972)  ("It is well

22

established, as pointed out by opposer, that decisions of foreign tribunals are in no way binding or controlling on a determination of an applicant's right of registration and an opposer's claim of damage based thereon in this country since these questions must necessarily be determined under the provisions of the Lanham Act as interpreted by the Patent Office and the various judicial tribunals in the United States."). Her enforcement of the forum selection clause can therefore only be characterized a self-serving attempt to avoid liability. *See Bldg. Constr. Enters., Inc.*, 2007 WL 1041003, at *4 (rejecting plaintiff's motion to dismiss and explaining that by electing to file the complaint in an unauthorized court, plaintiff waived its right to have the action adjudicated in the authorized court). Moreover, her request to enforce the forum selection clause in this Court (but not the TTAB) will create an inconsistent enforcement of that clause and will further prejudice Plaintiffs.[7]

### 2.    The Law Favors Plaintiffs' Choice of Forum

Ms. Millen will not be subject to any additional burden by defending against this action, and, even if additional burdens did exist, these considerations must be balanced against right of Plaintiffs to litigate their claims in their chosen forum.

The law provides that a plaintiffs' choice of forum is entitled to strong deference, and should not be disturbed unless the balance of factors weigh strongly in the defendant's favor. *Panavision Int'l., LP v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'"). Although Defendant argues these issues may be properly adjudicated by the parties' ongoing U.K. litigation, it is patently unfair to permit

---

[7]    Even if the Court decides that Plaintiffs' breach of contract claim belongs in the U.K., independent jurisdiction for Plaintiffs' declaratory judgment claims is separately conferred under 15 U.S.C. § 1120.

23

Defendant to shield herself from liability presumably everywhere but the U.K. given her wide ranging activities. Indeed, it was Defendant who first retained U.S. counsel to litigate the issues before the USPTO. *Millen Decl.*, ¶ 20.

Second, Defendant's argument is purely speculative given that the U.K. Court has never agreed to hear these claims. *See Austin Decl.*, ¶¶ 7-8. At no point has Defendant even suggested that she would withdraw her petitions for cancellation. Consequently, if Defendant's motion is granted, a U.S. tribunal will still need to consider the parties' rights and privileges under the U.K. contract. Nor will granting her motion promote judicial economy by eliminating the need for discovery in the U.S—Defendant's U.S. counsel has already stated that he fully expects to take "comprehensive" discovery in connection with her cancellation proceedings. D.I. 15-9 ("*Ederer Decl.*"), ¶ 6. Indeed, he stated that Defendant's discovery requests in that action were ready to serve "immediately following the conclusion of the [parties'] initial discovery conference." *Id.* Defendant provides no reason why her "comprehensive" discovery could not be served to equal effect before this Court.

Thus, should this Court dismiss Plaintiffs' Complaint, concurrent actions in both the U.S. and U.K. will continue with extensive discovery to be taken in both countries. Moreover, these overlapping tribunals are unable to provide sufficient remedy to Plaintiffs should they succeed since: (1) the USPTO lacks the ability to enjoin Defendant from taking further action in breach of the 2004 Buyout Agreement, and (2) the U.K. court is powerless to instruct the USPTO to maintain Plaintiffs' registrations on the principal registrar. *See Rhoades*, 504 F.3d at 1163; *see also McGraw-Hill Co., Inc.*, 375 F. Supp. 2d at 255 (declining to dismiss a trademark infringement action in favor of a concurrent Canadian litigation, because there was significant

24

doubt that the British Columbia court would provide injunctive relief over defendant's behavior in the U.S.).

Fourth, while once an important consideration, location of where discovery is to take place is no longer weighed heavily because of modern advances in communication and transportation.  *Fellaroy Corp. v. SPIG Indus., Inc.*, 2:09-cv-028, 2010 WL 3432283, at *6 (D.S.C. Aug. 30, 2010) (quoting *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D. N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.")).  Nevertheless, this factor still weighs in favor of Plaintiffs, because, as previously mentioned, Defendant's U.S. counsel has already made clear that he is fully prepared to take "comprehensive" discovery related to these issues in the U.S.  *See Ederer Decl.*, ¶ 6.  In sum, Defendant is misleading this Court by suggesting that judicial economy is served by dismissing this action in favor of the concurrent U.K. and TTAB litigations.

### D.    There is No Comity with the U.K. Litigation

As a general matter, abstention by a federal court is only warranted in extremely rare circumstances.  *NBC Universal, Inc. v. NBCUNIVERSAL.COM*, 378 F. Supp. 2d 715, 717 (E.D. Va. 2005) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)); *see also Royal and Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir.2006) ("The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . .to exercise the jurisdiction given to them.'") (quoting *Colorado River Water*, 424 U.S. at 817).  The instant action, which precedes Defendant's request to amend the U.K. litigation by more than two months, should have priority "absent the showing of balance of convenience in favor of the second action."  *See Volvo Constr. Equip. N. Am.*, 386 F.3d at 594-5 (internal citations omitted); *Blum Decl.*, Ex. C.

This Court has a strong interest in protecting public policies affected by the federal trademark laws at issue. *See, e.g., NBC Universal, Inc.*, 378 F. Supp. 2d at 716-17.  "Indeed, it is well-established that 'decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible' in United States courts hearing Lanham Act claims". *McGraw-Hill Co.*, 375 F. Supp. at 255.  The U.K. court will invariably be required to determine the parties' rights under § 2(c) of the Lanham Act; it is injudicious to have a foreign court address the parties' U.S. trademark rights, let alone a rarely addressed section of the Lanham Act. *See* Thomas H. Davis, Jr., *The Sixty-fourth Year of Administration of the U.S. Trademark (Lanham) Act of 1946*, 102 TRADEMARK REP. 1, 31-32 (2012) (noting that refusals for failure to comply with 2(c) of the Lanham Act are rare).  Thus, not only do the principals of comity not require dismissal of this action in favor the U.K. litigation; they advise against it.

## CONCLUSION

Based on the foregoing, Plaintiffs Karen Millen Fashions Limited and Mosaic Fashions US Limited f/k/a Karen Millen US Limited respectfully request that this Court deny the motion brought by the Defendant Karen Denise Millen and allow this case to proceed.

Respectfully Submitted,

Dated: September 9, 2014

KENYON & KENYON LLP

By: /s/ Erik C. Kane
    Erik C. Kane (VSB 68294)
    KENYON & KENYON LLP
    1500 K Street, N.W., Suite 700
    Washington, DC  20005
    Telephone: 202.220.4200
    Facsimile: 202.220.4201
    Email: ekane@kenyon.com

*Of Counsel*:
Michelle Mancino Marsh (pro hac vice)

Michael Kelly (pro hac vice)
Jeremy S. Boczko (pro hac vice)
KENYON & KENYON LLP
1 Broadway
New York, New York 10004
Telephone: 212.425.7200
Facsimile: 212.425.5288
Email: mmarsh@kenyon.com
        mkelly@kenyon.com
        jboczko@kenyon.com

*Attorney(s) for Plaintiffs,*
*Karen Millen Fashions Limited and*
*Mosaic Fashions US Limited f/k/a/*
*Karen Millen US Limited*

27

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of September 2014, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

Dated: September 9, 2014

By: /s/ Erik C. Kane
Erik C. Kane (VSB 68294)
KENYON & KENYON LLP
1500 K Street, N.W., Suite 700
Washington, DC  20005
Telephone: 202.220.4200
Facsimile: 202.220.4201
Email: ekane@kenyon.com

*Attorneys for Plaintiff Karen Millen Fashions Limited and Mosaic Fashions US Limited f/k/a Karen Millen US Limited*