

Exhibit B

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 92058954 |
|---|---|
| Party | Defendant<br>Karen Millen Fashions Limited |
| Correspondence Address | MICHELLE MANCINO MARSH<br>KENYON & KENYON LLP<br>1 BROADWAY<br>NEW YORK, NY 10004-1007<br>UNITED STATES<br>tmdocket@kenyon.com, mmarsh@kenyon.com, mkelly@kenyon.com, jboczko@kenyon.com |
| Submission | Motion to Suspend for Civil Action |
| Filer's Name | Michael Kelly |
| Filer's e-mail | tmdocket@kenyon.com, mmarsh@kenyon.com, mkelly@kenyon.com, jboczko@kenyon.com |
| Signature | /mk/ |
| Date | 06/16/2014 |
| Attachments | 2014-06-16, Mtn for Suspension of the Consolidated Cancellation Proceedings.pdf(3187961 bytes ) |

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| KAREN MILLEN,<br><br>　　　　　　　　Petitioner,<br><br>　　　v.<br><br>KAREN MILLEN FASHIONS LTD.,<br><br>　　　　　　　　Registrant. | **Consolidated Cancellation Proceedings**<br>Cancellation No. 92058954<br>Cancellation No. 92058960<br>Cancellation No. 92058979<br>Cancellation No. 92058992<br>Cancellation No. 92058994 |

## REGISTRANT'S MOTION TO SUSPEND THE CONSOLIDATED CANCELLATION PROCEEDINGS

Pursuant to 37 C.F.R. § 2.117, Registrant, Karen Millen Fashions Ltd. (henceforth, "Registrant"), respectfully requests that the above captioned cancellation proceedings be suspended pending a final disposition of *Karen Millen Fashions Limited et al. v. Karen Denise Millen*, Civil Action No. 1:14-cv-720, currently pending in the United States District Court for the Eastern District of Virginia (the "Civil Court Action"). In support of its motion, Applicant respectfully states the following:

1.　　　On April 2, 2014, Petitioner, Karen Millen (henceforth, "Petitioner") filed Notices of Cancellation against Registrant's United States Trademark Registrations Nos. 3,469,389, 3,570,233, 3,988,125, 4,322,741, and 4,412,747 covering the mark KAREN MILLEN and other related marks (henceforth, the "Consolidated Cancellation Proceedings"). The Notices of Cancellation allege that Petitioner did not consent to Registrant's trademarks incorporating her name as required by 2(c) of the Lanham Act, 15 U.S.C. § 1052.

2.　　　On June 16, 2014, Registrant, along with another plaintiff, initiated the Civil Court Action. A copy of the Complaint in the Civil Court Action is attached hereto as Exhibit A.

3.     The Civil Court Action includes claims for, *inter alia,* declaratory judgment and breach of contract, under federal law and state law, based on Registrant's predecessor-in-interest acquiring Petitioner's former company and Petitioner's assignment of the KAREN MILLEN mark to Registrant's predecessor-in-interest, and Petitioner's consent to allow Registrant's predecessor-in-interest to use and register additional trademarks incorporating her name. *(See, e.g., ¶¶ 22-23 of the Complaint in the Civil Court Action).*

4.     The Cancellation Proceedings and the Civil Court Action have overlapping issues regarding Registrant's ownership of the KAREN MILLEN mark and Registrant's authority to register additional trademarks incorporating Petitioner's name. Accordingly, a final judgment in the Civil Court Action will include a determination of, among other things, the exact issues that are presently before the Board, thus rendering a resolution of the Cancellation Proceedings unnecessary.

WHEREFORE, Registrant respectfully requests that the Board suspend all further proceedings in the Consolidated Cancellation Proceedings until final disposition of the Civil Court Action. In the event that the Board should not grant Registrant's request to suspend the Consolidated Cancellation Proceedings, Registrant respectfully requests that the deadline and expiration dates for the discovery and testimony periods be reset to a date no less than forty (40) days following the Board's decision on the instant motion.

## MEMORANDUM IN SUPPORT

It is well-established that where a pending civil action between parties to a proceeding before the Board may be dispositive of the proceeding before the Board, the Board may suspend its proceeding until final disposition of the civil action. *See* 37 C.F.R. § 2.117(a); TMBP 510.02(a). *See also General Motors Corp. v. Cadillac Club Fashions, Inc.*, 22 U.S.P.Q.2d 1933, 1936 (T.T.A.B. 1992); *The Other Telephone Co. v. Connecticut National Telephone Co., Inc.*, 181 U.S.P.Q. 125, 127 (T.T.A.B. 1974); *Tokaido v. Honda Associates, Inc.*, 179 U.S.P.Q. 861, 862 (T.T.A.B. 1973); *Whopper Burger, Inc. v. Burger King Corp.*, 171 U.S.P.Q. 805, 807 (T.T.A.B 1971). Indeed, in such cases, "it is deemed to be the better policy to suspend proceedings [before the Board] until the civil suit has been finally concluded." *Tokaido*, 179 U.S.P.Q. at 862.

There are several reasons for this policy. The first being that, "while a decision by the District Court would be binding upon the Patent Office, a decision by the Trademark Trial and Appeal Board would only be advisory in respect to the disposition of the case pending in the District Court." *Id. See also Whopper Burger*, 171 U.S.P.Q. at 807. Second, in light of the fact that a final judgment in the civil action would necessarily eliminate the need for further litigation in the proceeding before the Board, suspension of the proceeding before the Board serves the interest of judicial economy. Lastly, suspending the proceeding before the Board would eliminate the risk of conflicting judgments being issued by the Board and the District Court.

The above-referenced policy justifications for suspension of proceedings before the Board in favor of civil actions apply in the present case. The Notices of Cancellation served by Petitioner allege that Petitioner did not consent to Registrant's trademarks incorporating Petitioner's name as required by 2(c) of the Lanham Act, 15 U.S.C. § 1052. Whether Petitioner

conveyed consent to Registrant for marks incorporating her name will be decided by the Civil Court Action. Therefore, a resolution of Registrant's claims in the Civil Court Action will involve a determination of the same issues Petitioner seeks to have the Board decide. Accordingly, a final judgment in the Civil Court Action will be determinative and dispositive of the claims raised in the Consolidated Cancellation Proceedings. In contrast, decisions in the Consolidated Cancellation Proceedings will have, at most, only an advisory effect on the Civil Court Action. *See Tokaido*, 179 U.S.P.Q. at 862. Suspending the Consolidated Cancellation Proceedings would thus conserve judicial resources and the resources of the litigants. Moreover, a suspension would avoid contrary determinations by the Board and the District Court.

Further, given the breach of contract claim in the Civil Court Action, final judgment in the Civil Court Action will require resolution of additional issues not presently before the Board. A final judgment in the Consolidated Cancellation Proceedings, therefore, will not eliminate the need for continued litigation in the Civil Court Action.

In light of the above, suspension of these proceedings is in the interest of judicial economy and comports with the practice and precedent of the Board. Accordingly, Registrant respectfully requests that the Board suspend all further proceedings in the Consolidated Cancellation Proceedings until final disposition of the Civil Court Action.

Respectfully submitted,

KENYON & KENYON LLP

Dated: June 16, 2014     By: _____
Michelle Mancino Marsh
Michael Kelly

-4-

Jeremy S. Boczko
KENYON & KENYON LLP
1 Broadway
New York, New York 10004
Telephone: 212.425.7200
Facsimile: 212.425.5288

*Attorneys for Registrant,*
*Karen Millen Fashions Limited*

# EXHIBIT A

FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

2014 JUN 16  P 4: 03

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| KAREN MILLEN FASHIONS LIMITED and MOSAIC FASHIONS US LIMITED f/k/a KAREN MILLEN US LIMITED<br><br>*Plaintiffs,*<br><br>v.<br><br>KAREN DENISE MILLEN<br><br>*Defendant.* | Civil Action No. 1:14 CV 720 CMH/TCB<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiffs, Karen Millen Fashions Limited (henceforth, "KMFL") and Mosaic Fashions US Limited f/k/a Karen Millen US Limited (henceforth, "Mosaic Fashions") (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint allege, upon knowledge as to their own acts and upon information and belief as to the acts of others, as follows:

### NATURE OF THE ACTION

1.      This is an action for breach of contract and declaratory judgment arising from the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.* and 28 U.S.C. § 2201-02.  By this action, Plaintiffs seek remedies for breach of contract and a declaratory judgment that defendant Karen Denise Millen (henceforth, "Defendant" or "Ms. Millen") granted consent to Plaintiffs to use and register trademarks incorporating Ms. Millen's name and Plaintiffs seek damages and remedies in connection with Ms. Millen's acts in breach of contract, including but not limited to, filing trademark applications in the United States Patent And Trademark Office (henceforth, "USPTO") for marks incorporating Ms. Millen's name and initiating Cancellation proceedings in the USPTO against KMFL's U.S. trademark registrations.

## THE PARTIES

2.      Karen Millen Fashions Limited is a United Kingdom limited liability company
having its principal place of business in London, United Kingdom.

3.      Mosaic Fashions US Limited f/k/a Karen Millen Limited is a United Kingdom
limited liability company having its principal place of business in New York, New York.

4.      Karen Denise Millen, upon information and belief, is a United Kingdom citizen
living in Witney, Oxfordshire, United Kingdom.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction over this action is conferred upon this Court:  (i)
pursuant to 28 U.S.C. §§ 2201 and 2202, because it involves a request for declaratory judgment
in a case of actual controversy; (ii) pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, because,
*inter alia*, the suit concerns federally registered trademarks or the right to register trademarks;
and (iii) pursuant to jurisdiction pendent and ancillary thereto.

6.      This Court has jurisdiction over Defendant and venue is properly laid in this
District pursuant to 28 U.S.C. § 1391(b) and/or (c) in that, on information and belief, (1)
Defendant regularly transacts business in this District or has committed the tortious acts
complained of herein within this District, which acts have caused and will cause injury to
Plaintiffs; (2) Defendant includes aliens, who may be sued in any District; and/or (3) a
substantial part of property that is the subject of the action is situated in this District.

## FACTS

A.    **MS. KAREN MILLEN**

7.      Ms. Millen is a former principal owner of Karen Millen Holdings Limited and
Karen Millen Limited (henceforth and collectively, "KM Limited"), a United Kingdom
corporation that sold women's fashion apparel bearing the KAREN MILLEN name.

8.      In or about September 2000, Ms. Millen directed KM Limited to begin selling

KAREN MILLEN branded women's fashion apparel in the United States.

9.      In support of KM Limited's efforts and to protect its brand, Ms. Millen executed a

written consent granting KM Limited the right for "exclusive and continuous use of [Ms.

Millen's] name, indefinitely" as required by § 2(c) of the Lanham Act, 15 U.S.C. § 1052.   A

copy of that consent is attached to hereto as Exhibit A (the "Consent").

10.     When Ms. Millen executed the Consent, she did not limit it to a specific

trademark application or filing date. *See* Exhibit A.

11.     As shareholder and officer of KM Limited, Ms. Millen also participated in the

filing of at least one U.S. Trademark Application in connection with the Karen Millen name,

including, personally signing documents on the company's behalf through at least 2003. *See,*

*e.g.*, Exhibit A; *see also* Statement of Use for U.S. Trademark App. Serial No. 76/129,319,

attached hereto as Exhibit B.

**B.      THE 2004 BUY OUT AGREEMENT**

12.     Pursuant to a "buy out" agreement entered into in June 2004, Plaintiffs Mosaic

Fashions and KMFL (by and through its predecessors-in-interest), acquired Ms. Millen's rights

and ownership interest in KM Limited and the KAREN MILLEN trademarks (including all

common law rights).  This agreement is henceforth referred to as the "Buy Out Agreement."

Furthermore, the Buy Out Agreement contained restrictions whereby Ms. Millen agreed not to

make commercial use of her name in similar or competing business ventures, agreed not to use

the KAREN MILLEN trademarks and consented to the use and filing of new trademark

registrations incorporating her name.

13.     The rights granted under the Buy Out Agreement give Plaintiffs the right to

register the mark KAREN MILLEN and other related marks in the United States in connection

with Plaintiffs' business, which necessarily grants Ms. Millen's consent to Plaintiffs' use and registration of her name.

14. Ms. Millen received a substantial sum of money in exchange for, *inter alia*, her assignment to Plaintiffs (through KMFL's predecessors-in-interest) the rights in the KAREN MILLEN mark and other marks incorporating the Karen Millen name (collectively, "KAREN MILLEN Marks") and her consent to allow Plaintiffs to use and register additional trademarks incorporating Ms. Millen's name.

## C.    PLAINTIFFS' KAREN MILLEN MARKS

15. After acquiring Ms. Millen's ownership and trademark rights, Plaintiffs invested substantial time, money, and effort promoting the KAREN MILLEN Marks.

16. As a result of these efforts, Plaintiffs have become a highly successful multi-national women's apparel retailer, selling and distributing KAREN MILLEN women's fashion apparel and other products in the United States and across the globe. Plaintiffs operate retail stores under the KAREN MILLEN mark in the United States, United Kingdom, Indonesia, Austria, Austria, Denmark, Norway, Russia, the Republic of Ireland and many other European countries.

17. The success of the KAREN MILLEN stores and products is due in large part to Plaintiffs' noteworthy designs and successful marketing efforts, which have been based on Plaintiffs' investment of substantial amounts of capital and other resources in development of strong and distinctive branding for their products and retail stores, including the KAREN MILLEN Marks.

18. As part of their commitment to protecting the KAREN MILLEN brand and with the written consent acquired from Ms. Millen during her tenure with the business and subsequent

Buy Out Agreement, Plaintiffs have secured federal trademark registrations for the KAREN

MILLEN Marks, including the following:

| Mark | Registration No. | Application Date | Registration Date |
| --- | --- | --- | --- |
| KAREN MILLEN | 3,469,389 | June 28, 2005 | July 15, 2008 |
| KAREN MILLEN | 3,570,233 | November 9, 2007 | February 3, 2009 |
| KAREN MILLEN | 3,988,125 | October 22, 2010 | July 5, 2011 |
| KAREN BY KAREN MILLEN | 4,322,741 | July 24, 2012 | April 23, 2013 |
| KM BY KAREN MILLEN | 4,412,747 | June 22, 2012 | October. 8, 2013 |

## D.    THE CURRENT DISPUTE

19.    In breach of the Buy Out Agreement, Ms. Millen has undertaken activities to

begin a competing company intent on selling, *inter alia*, fashion apparel, beauty products, and

housewares using the KAREN MILLEN mark and other confusingly similar marks.

20.    In furtherance of that effort, and in breach of the Buy Out Agreement, Ms. Millen

filed several trademark applications in the USPTO, including the following:

| Mark | Serial No. | Application Date |
| --- | --- | --- |
| KAREN BY KAREN MILLEN | 86/246,014 | April 8, 2014 |
| KAREN MILLEN | 86/246,046 | April 8, 2014 |
| HOME BY KAREN | 86/246,065 | April 8, 2014 |
| HOME BY KAREN MILLEN | 86/246,059 | April 8, 2014 |

| Mark | Serial No. | Application Date |
|------|-----------|------------------|
| *Karen* | 86/246,052 | April 8, 2014 |

(henceforth, "Defendant's KAREN MILLEN Trademark Applications").

21.     In April 2014, and in breach of the Buy Out Agreement, Ms. Millen also initiated five cancellation proceedings against Plaintiff's KAREN MILLEN Marks with the Trademark Trial and Appeals Board, based on the allegation that Ms. Millen did not consent to Plaintiffs' registration of the trademarks incorporating her name.

22.     Until her recent filings of petitions for cancellation of Plaintiffs' KAREN MILLEN Marks, Ms. Millen never opposed any U.S. trademark application or registration owned by Plaintiffs or their predecessors-in-interest.

23.     Ms. Millen, through her recent petitions for cancellation, and filing of Defendant's KAREN MILLEN Trademark Applications, now seeks to improperly reap the benefits of Plaintiffs' hard-earned reputation and goodwill that they purchased from Ms. Millen and then subsequently developed in connection with the KAREN MILLEN Marks after Ms. Millen sold them to Plaintiffs.

24.     Ms. Millen has breached the Buy Out Agreement by:  (i) beginning a competing business venture in the United States in connection with her name; (ii) filing trademark applications in the United States for marks incorporating her name; (iii) attempting to use the KAREN MILLEN Marks in the course of business; and (iv) seeking cancellation of Plaintiffs' valid registrations for which Ms. Millen has already conveyed consent.  Ms. Millen's actions are harming and will continue to harm Plaintiffs and be an obstacle to Plaintiffs' business.

### D.    THE EXISTENCE OF AN ACTUAL CONTROVERSY

25.    Ms. Millen is presently engaged in litigation in the United Kingdom regarding, inter alia, resuming use of her name commercially.

26.    Ms. Millen has publicly stated that she "will not rest until I have my company completely restored to me."

27.    Indeed, Ms. Millen's intentions have been widely reported, for example, in the Telegraph ("Karen Millen wants her name back - Designer Karen Millen fights to resume trading under her own name after losing everything in the 2008 Icelandic banking crash") and the Daily Mail ("'I won't rest until I have my company restored to me': Karen Millen sues Icelandic bank for £500m after she lost business in 2008 crash").

28.    Upon information and belief, Ms. Millen has begun an aggressive campaign to reclaim her name, not just in the UK litigation, but also in the U.S.

29.    For example, Ms. Millen retained U.S. legal counsel and recently in April 2014 filed petitions to cancel the KAREN MILLEN Marks owned by Plaintiffs.

30.    At the same time, Ms. Millen applied for U.S. Trademark Registrations for her name covering the same categories of goods currently offered by Plaintiffs under the KAREN MILLEN Marks.

31.    In fact, as a required part of Ms. Millen's trademark applications in the United States, she executed a declaration stating, inter alia, that she is "the owner of the trademark/service mark sought to be registered," or that she believes that she is "entitled to use such mark in commerce," and, brazenly declares that "to the best of her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or

in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."

32.     Accordingly, Ms. Millen has submitted a sworn declaration to the United States Trademark Office that she has superior rights to the KAREN MILLEN Marks owned by Plaintiffs, and that Plaintiffs have no right to use their KAREN MILLEN Marks in United States commerce.

33.     The proceeding in the United Kingdom addresses the issues pertaining to the United Kingdom and would leave unresolved the issue of use and registration of the Karen Millen name in the United States and the allegations made by Ms. Millen against the KAREN MILLEN Marks.

34.     Given that Plaintiffs make widespread use of the KAREN MILLEN Marks and operate numerous retail locations in the United States using the KAREN MILLEN Marks, there is a significant risk of similar or parallel proceedings being brought in the United States. Accordingly, there exists a real controversy over the use, ownership and validity of the KAREN MILLEN Marks in the United States.

35.     While Ms. Millen previously consented to Plaintiffs' use of her name as a trademark, she now challenges that right and Plaintiffs' right to register the KAREN MILLEN Marks.  Specifically, Ms. Millen contends that Plaintiffs submitted a false or fraudulent declaration to the U.S. Patent and Trademark Office that was material to the registration and the office relied on such declaration in issuing the registration and Ms. Millen has been harmed thereby.

36.     Because Plaintiffs have registrations for KAREN MILLEN, Ms. Millen's own applications for confusingly similar marks will likely be rejected by the U.S. Patent and Trademark Office in view of Plaintiffs' registrations.

37.     In addition, because Plaintiffs have priority of rights over Ms. Millen, Ms. Millen must argue that she will be harmed by the continued registration of Plaintiffs' KAREN MILLEN Marks by preventing her from conducting business under a confusingly similar name in the United States and by damage to the goodwill in her own business endeavors under a confusingly similar mark.

38.     By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment declaring their exclusive right to use and register the KAREN MILLEN Marks under 15 U.S.C. § 1119.

39.     In addition, Plaintiffs are entitled to a declaratory judgment declaring that they are not liable under 15 U.S.C. § 1120 for obtaining a false or fraudulent registration.

40.     Finally, Plaintiffs are entitled to injunctive relief restraining Ms. Millen from challenging the Plaintiffs' exclusive rights to own the KAREN MILLEN Marks, applying for trademark registrations for confusingly similar marks and further acts in breach of the Buy Out Agreement, and to recover attorneys' fees and any damages proven to have been caused by reason of Ms. Millen's aforesaid acts in breach of the Buy Out Agreement.

## COUNT I
## BREACH OF CONTRACT

41.     Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

42.     There is a contractual, quasi-contractual and/or other legal relationship between Plaintiffs and Defendant.

43.     By reason of the facts and circumstances set forth above, the Buy Out Agreement formed a valid and enforceable contract between, inter alia, Mosaic Fashions, KMFL (by and through its predecessors-in-interest), and Ms. Millen.

44.     Acting upon the mutual promises and covenants set forth in the Buy Out Agreement, Plaintiffs have performed, and continue to perform, all of their duties under the Buy Out Agreement.

45.     Defendant has, without justification, breached the Buy Out Agreement by:  (i) beginning a competing business venture in connection with her name; (ii) filing U.S. trademark applications for marks incorporating Defendant's name; (iii) attempting to use the KAREN MILLEN Marks; and (iv) initiating Cancellation proceedings in the USPTO against Plaintiffs' KAREN MILLEN Marks.

46.     As a direct result of Defendant's breach of contract, Plaintiffs have suffered direct, foreseeable, and proximate monetary losses in an amount to be proven at trial, but which, exclusive of interest and costs, is at least ten-million dollars ($10,000,000).

## COUNT II

### DECLARATORY JUDGMENT
### (PLAINTIFFS' RIGHT TO USE AND REGISTER TRADEMARKS INCOPORATING DEFENDANT'S NAME AND DEFENDANT MAY NOT USE OR REGISTER TRADEMARKS INCORPORATING DEFENDANT'S NAME)

47.     Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

48.     By reason of the facts and circumstances set forth above, the Buy Out Agreement formed a valid and enforceable contract between Mosaic Fashions, KMFL (by and through its predecessors-in-interest), and Ms. Millen.

49.     Mosaic Fashions and KMFL (by and through its predecessors-in-interest) acquired from Ms. Millen the exclusive right to use and register the KAREN MILLEN mark and any confusingly similar mark in exchange for substantial sum of money.

50.     The Buy Out Agreement further contained a restriction prohibiting Ms. Millen from using her name in subsequent business ventures.

51.     In the Buy Out Agreement, Ms. Millen granted to Mosaic Fashions and KMFL (by and through its predecessors-in-interest) Ms. Millen's express and/or implied consent to use, register and maintain any U.S. trademark incorporating her name.

52.     In the Buy Out Agreement, Ms. Millen agreed not to use the KAREN MILLEN Marks.

53.     Accordingly, Plaintiffs seek a declaration based on 15 U.S.C. § 1119 that Plaintiffs may use, apply for, register and maintain any U.S. trademark incorporating Ms. Millen's name, because Defendant has consented to Plaintiffs' use, registration and ownership of trademarks incorporating Defendant's name.

54.     Moreover, Plaintiffs seek a declaration that Defendant is not entitled to U.S. Trademark registrations for the KAREN MILLEN mark or any confusingly similar marks.

### COUNT III

### DECLARATORY JUDGMENT
### (PLAINTIFFS DID NOT PROCURE A FALSE OR FRAUDULENT REGISTRATION)

55.     Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

56.     By reason of the facts and circumstances set forth above, the Buy Out Agreement formed a valid and enforceable contract between Mosaic Fashions, KMFL (by and through its predecessors-in-interest), and Ms. Millen.

57.     Mosaic Fashions and KMFL (by and through its predecessors-in-interest) acquired from Ms. Millen consent to use her name as a trademark and register the KAREN MILLEN mark and any confusingly similar mark in exchange for a substantial sum of money.

58.     Plaintiffs properly relied on Ms. Millen's consent in submitting her prior declaration to the U.S. Patent and Trademark Office in applying for the KAREN MILLEN Marks.

59.     Accordingly, Plaintiffs seek a declaration based on 15 U.S.C. § 1120 that Plaintiffs did not procure a false or fraudulent registration.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment for Plaintiffs on each and every count, and further that this Court:

A.     Award to Plaintiffs actual and compensatory damages, with interest, in an amount to be determined at trial but in no event less than ten-million dollars ($10,000,000);

B.     Award to Plaintiffs punitive and exemplary damages in an amount to be determined at trial;

C.     Grant to Plaintiffs an Order entering a permanent injunction against Defendant and those persons or entities acting in concert or participation with her who receive actual notice of the Order by personal service or otherwise from interfering with Plaintiffs' use and registration of the Karen Millen Marks at issue or any similar trademarks, whether alone or in any combination;

D.     Grant to Plaintiffs an Order for permanent injunction against Defendant and those persons or entities acting in concert or participation with her who receive actual notice of the Order by personal service or otherwise from seeking trademark registration for the KAREN MILLEN mark or any confusingly similar trademarks in the United States;

E.      Grant to Plaintiffs an Order for permanent injunction against Defendant and those persons acting in concert or participation with her who receive actual notice of the Order by personal service or otherwise from beginning a competing business venture with the KAREN MILLEN mark in the United States or otherwise using the KAREN MILLEN mark in connection with a competing business;

G.      Grant to Plaintiffs an Order enjoining and restraining Defendant from inducing, encouraging, instigating, aiding, abetting or contributing to any of the aforesaid acts;

H.      Grant to Plaintiffs an Order instructing the Defendant to dismiss, with prejudice, the Cancellation proceedings initiated by Defendant against KMFL in connection with KAREN MILLEN Marks;

I.      Grant to Plaintiffs an Order declaring that Plaintiffs have the exclusive right to register and use each of the KAREN MILLEN Marks at issue, whether alone or in any combination, and that Plaintiffs may use, apply for, register and maintain any other U.S. trademark incorporating Ms. Millen's name;

J.      Award to Plaintiffs their costs in these proceedings, together with reasonable attorney fees as may be allowed by applicable law and/or the equity powers of this Court; and

K.      Award to Plaintiffs such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs respectfully demand a trial by jury of any and all issues properly triable to a jury in the above-captioned action.

Dated: June 16, 2014

KENYON & KENYON LLP

By: _Erk C. Kan_

Erik C. Kane
VA No. 68294
KENYON & KENYON LLP
1500 K Street, N.W., Suite 700
Washington, DC  20005
Telephone: 202.220.4200
Facsimile: 202.220.4201
Email: ekane@kenyon.com

*Of Counsel*:
Michelle Mancino Marsh
Michael Kelly
Jeremy S. Boczko
KENYON & KENYON LLP
1 Broadway
New York, New York 10004
Telephone: 212.425.7200
Facsimile: 212.425.5288
Email: mmarsh@kenyon.com
        mkelly@kenyon.com
        jboczko@kenyon.com

*Attorney(s) for Plaintiffs*,
Karen Millen Fashions Limited and
Mosaic Fashions US Limited f/k/a Karen
Millen US Limited

- 14 -

# EXHIBIT A

Attorney Docket: 2201 001

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| IN RE APPLICANT | KAREN MILLEN LIMITED |
| MARK | **KAREN MILLEN** |
| SERIAL NUMBER | N/A |
| FILING DATE | N/A |
| Docket No | 2201 001 |

------------------------------------------------------

### DECLARATION UNDER 37 C.F.R. §2.20 FOR CONSENT OF USE OF NAME

That I, Karen Millen, hereby state that I have given my consent to KAREN MILLEN LIMITED to the exclusive and continuous use of my name, indefinitely, for the goods as stated in the above captioned Trademark Application, filed herewith

That I have been warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, I declare that the facts set forth in this application, amendment and declaration are true, that all statements made of my own knowledge are true, and that all statements made on information and belief are believed to be true

Respectfully submitted,

Date    23.08. 2000

Karen Millen

# EXHIBIT B

IN THE UNITED STATES PATENT OFFICE AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of | : Karen Millen |
| Serial No. | : 76/129,319 |
| Filing Date | : 09/18/00 |
| Mark | : **KAREN MILLEN** |
| Docket No. | : 2201.001 |

SUBMISSION OF STATEMENT OF USE

Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, Virginia 22202-3514

Sir:

I hereby certify that this documentation is being sent via First Class Mail in an envelope to Comm. Of Trademarks, Arlington, VA 22202, this _25ª_ Day of September, 2003, by _Kathy Nicholson Logrde._

Applicant is submitting herewith the Statement of Use and examples showing use for the above-

identified trademark, Serial No. 76/129,319.

The undersigned authorizes the Office to charge the filing fees in the amount of $200.00 (2

classes) to McHale & Slavin Deposit Account No. 13-0439.

It is respectfully requested that the Statement of Use is entered, and that the application will

proceed to registration.

McHALE & SLAVIN, P.A.
2855 PGA Blvd.
Palm Beach Gardens, FL 33410
PH# 561-625-6575; FAX# 561-625-6572
palmbeach@mspatents.com

Respectfully submitted,

Michael A. Slavin
Pat./Reg. No. 34,016

09-29-2003

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

**~TRADEMARK/SERVICE MARK ALLEGATION OF USE (Statement of Use/
Amendment to Allege Use) (15 U.S.C. § 1051(c) or (d))~**

~To the Assistant Commissioner for Trademarks~

**<TRADEMARK/SERVICEMARK INFORMATION>**

<Mark> KAREN MILLEN
<Serial Number> 76/129,319

**<APPLICANT INFORMATION>**

<Name> Karen Millen Limited
<Street> Maidstone Buisiness Centre, St. Peter Street
<City>   Maidstone, Kent
<State>
<Country> United Kingdom
<Zip/Postal Code>  ME15 OST

**<NOTICE OF ALLOWANCE INFORMATION>**

<Notice of Allowance> yes   ~Enter YES if you are filing the Allegation of Use **after** a Notice of Allowance has
issued.  If not, enter NO.~

**<GOODS AND/OR SERVICES INFORMATION>**

<All Goods and/or Services in Application/Notice of Allowance>~The owner is using or using through a related
company the mark in commerce on or in connection with all goods and/or services listed in the application or Notice of Allowance.
If not, list in the next section the goods and/or services not in use to be deleted:~

<Goods and/or Services Not in Use to be **Deleted**>~In the following space, list only those goods and/or services (and/or
entire class(es)) appearing in the application or Notice of Allowance for which the owner is **not** using the mark in commerce.
*LEAVE THIS SPACE BLANK IF THE OWNER IS USING THE MARK ON OR IN CONNECTION WITH ALL THE GOODS
AND/OR SERVICES LISTED IN THE APPLICATION OR NOTICE OF ALLOWANCE.*~

**<USE INFORMATION>**

<Date of First Use Anywhere> 08/01/2002
<Date of First Use in Commerce>  08/28/2002

**<OPTIONAL - REQUEST TO DIVIDE INFORMATION>**

<Request to Divide>    ~Enter YES if you are you submitting a request to divide with this document.  If not, enter NO.~

PTO Form 1553 (REV 12/99)
OMB Control No. 0651-0009 (Exp. 8/31-2001)

U.S. DEPARTMENT OF COMMERCE/Patent and Trademark Office
There is no requirement to respond to this collection of information
unless  a currently valid OMB number is displayed.

**\<FEE INFORMATION\>**

| $100.00  x  \<Number of Classes\> 2 | = \<Total Fees Paid\>  $200.00 |
|---|---|

**\<SPECIMEN AND SIGNATURE INFORMATION\>**

~Applicant requests registration of the above-identified trademark/service mark in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. §1051 et seq., as amended).  Applicant is the owner of the mark sought to be registered, and is using the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce.

**(You MUST ATTACH A SPECIMEN showing the mark as used in commerce for at least one product or service in each international class covered.)**

The undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this document, declares that he/she is properly authorized to execute this document on behalf of the Owner; and all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true.~

~Signature~ _____

\<Date Signed\>  3/9/03

\<Name\>  Karen Millen

\<Title\>  Owner

**\<CONTACT INFORMATION\>**

\<Name\>  Michael A. Slavin

\<Company/Firm Name\> McHale & Slavin, P.A.

\<Street\> 4440 PGA Blvd., Suite 402

\<City\>  Palm Beach Gardens

\<State\>  FL

\<Country\> US

\<Zip/Postal Code\> 33410

\<Telephone Number\>  (561) 625-6575

\<Fax Number\>  (561) 625-6572

\<e-Mail Address\>  palmbeach@mspatents.com

**\<CERTIFICATE OF MAILING\>** ~Recommended to avoid lateness due to mail delay.~

~I certify that the foregoing is being deposited with the United States Postal Service as first class mail, postage prepaid, in an envelope addressed to the Assistant Commissioner for Trademarks, 2900 Crystal Drive, Arlington, VA 22202-3513, on~

\<Date of Deposit\>  9/24/03

~Signature~

\<Name\>  Cathy Nicholson

The information collected on this form allows an applicant to demonstrate that it has commenced use of the mark in commerce regulable by Congress. With respect to applications filed on the basis of an intent to use the mark, responses to the request for information are required to obtain the benefit of a registration on the Principal or Supplemental Register. 15 U.S.C. §§1051 et seq. and 37 C.F.R. Part 2.  All information collected will be made public. Gathering and providing the information will require an estimated thirteen minutes. Please direct comments on the time needed to complete this form, and/or suggestions for reducing this burden to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington D.C. 20231. Please note that the PTO may not conduct or sponsor a collection of information using a form that does not display a valid OMB control number. (See bottom left side of this form.)



SR015 Blue Skirt



732182923

US : Size 4
UK : Size 8                              $ 135.00



TR035 Black Top

732177696

US : Size 4
UK : Size 8                              $ 99.00

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *REGISTRANT'S MOTION TO SUSPEND THE CONSOLIDATED CANCELLATION PROCEEDINGS* was served by first class mail, postage prepaid, on this 16th day of June, 2014, at the following address:

Louis S. Ederer, Esq.
Arnold & Porter LLP
399 Park Ave.
New York, NY 10022

Jeremy S. Boczko